650 P.2d 699

The STATE of Idaho,
Plaintiff-Respondent,

v.

Harry John CURTIS III,
Defendant-Appellant.

No. 13776.

Court of Appeals of Idaho.

June 29, 1982.

Rehearing Denied Aug. 23, 1982.
Review Denied Oct. 10, 1982.

558

Harry John Curtis III, pro se.

David H. Leroy, Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Justice.

Harry John Curtis III pled guilty to murder in the second degree, and to possession of more than three ounces of marijuana, a felony. The district court accepted his pleas, entered judgments of conviction, and sentenced Curtis to two terms of imprisonment: the statutory maximum of five years, determinate, for the marijuana conviction, and an indeterminate life sentence for the murder conviction, to be served consecutive to the marijuana sentence.

Curtis appeals these convictions, raising two issues. First, did the district court err by accepting Curtis's guilty pleas without first conducting a hearing to inquire into his mental competency to so plead? Second, was Curtis's plea to second degree murder entered involuntarily and without understanding because neither the court nor defense counsel explained the element of intent to him?

On November 28, 1979, Curtis shot and killed William Henneborn at the victim's residence near Potlatch, Idaho. That same day, Curtis was arrested and charged with first degree murder. Ironically, a proceeding to have Curtis involuntarily committed to the Idaho Department of Health and Welfare due to mental illness was dismissed from court only weeks earlier. Doctors at State Hospital North had diagnosed him as not dangerous to himself or others.

After his arrest for the alleged murder, Curtis underwent two separate psychiatric examinations by different doctors while he was in the Latah County jail awaiting his preliminary hearing and arraignment. Both psychiatrists reported that Curtis was manic-depressive psychotic, was unable to conform his conduct to the requirements of the law at the time of the killing, and was a present danger to himself and others. The doctor who examined Curtis within three days of the murder reported that Curtis was not competent to understand and aid his attorney in the proceedings against him; the other doctor, who examined him four days after the first examination, felt that Curtis was competent to do so. Curtis was able to relate the events of the murder to each doctor. He also informed one doctor that for a long period prior to the murder he had been on a drinking binge, and for the three days prior to November 28 he had been injecting Demerol intravenously.

The magistrate presiding over the preliminary hearing found probable cause to bind Curtis over to the district court on the murder charge. Curtis was then arraigned before the district court. He was informed of his right to remain silent, his right to confront witnesses, and his right to trial by jury. The court also advised him that if he pled guilty, he waived those rights. He pled not guilty, and informed the court that he had filed a notice of intent to rely on the defense of mental disease or defect. See I.C. §§ 18–207 through 18–215. (Repealed, effective July 1, 1982; 1982 Sess. Laws, ch. 368, p. 919.)

The court ordered the Director of the Department of Health and Welfare to designate a qualified psychiatrist to examine and report on the mental condition of Curtis. Curtis was sent to the Idaho Security Medical Facility in Boise for the examination. He underwent a series of various

physiological, neurological, and psychological examinations; personal interviews were conducted; and data on his history of past mental illnesses was collected and reviewed. The consulting psychiatrist determined that although Curtis exhibited a sociopathic personality and admitted to drug abuse, he did not suffer from a mental disease or defect. The report concluded that Curtis was capable of understanding the proceedings and aiding his attorney in his own defense. He was capable of appreciating the wrongfulness of his conduct and conforming his behavior to the requirements of the law at the time of the alleged murder. On appeal, Curtis argues that the conflict between this diagnosis and the diagnoses of the two psychiatrists who had the opportunity to examine him at the jail soon after Henneborn was killed, raises a question of fact regarding his mental competency, which should have been resolved by a formal competency hearing.

It is important to note Curtis's history of mental illness at this point. The record discloses a repeating pattern: mental and emotional instability, precipitated by rejection by a close acquaintance, resulting in subsequent substance abuse, psychosis and then recovery due to institutionalization and treatment. The first reported incident occurred in 1974, possibly due to the breakup of his marriage. He began abusing controlled substances and alcohol, and he was arrested for auto theft. He was admitted to Western State Hospital in Fort Steilacoom, Washington, for observation and treatments. Psychiatrists there diagnosed Curtis as manic-depressive psychotic and not mentally responsible for the alleged criminal conduct. They found he was unable to appreciate his peril or perceive the criminality or moral qualities of his actions. Apparently, his manic-depressive condition was easily treated by administration of medication. He was released after treatment, having apparently recovered. He then drifted between different jobs in the Pacific Northwest for several years. Again in 1979, Curtis suffered the breakup of a romantic relationship when the woman with whom he was living left him to move in with William Henneborn. Henneborn had been his best friend, and was the victim of the murder. When the woman left him, Curtis again began abusing alcohol and controlled substances. He also began selling controlled substances as a means of support. In October of that year, friends and acquaintances of Curtis became concerned when he exhibited signs of mental and emotional instability. They attempted to have him civilly committed to a mental institution. Incompetency proceedings were instituted in Latah County, Idaho. Psychiatric examinations by different doctors resulted in contradictory diagnoses. One doctor found Curtis to be mentally ill and a danger to himself and others, if allowed to remain at liberty. Curtis was sent to State Hospital North in Orofino, Idaho, for treatment and diagnosis. Doctors there determined that as long as he was not under the influence of drugs or alcohol, he was in control of his impulses. He was diagnosed as mentally competent and was released. Those proceedings ended in early November, 1979. Apparently, Curtis resumed his substance abuse after his release, including the Demerol injections and alcohol binge, until the murder of Henneborn.

Following the submission of the court ordered psychiatric report from the Idaho Security Medical Facility—diagnosing Curtis as mentally competent—Curtis agreed to accept a plea bargain from the Latah County prosecutor. The prosecutor agreed to amend the murder charge from first degree to second degree, and Curtis agreed to plead guilty to the charge of second degree murder and possession of marijuana.

A hearing was held on April 17 for the purpose of allowing Curtis to change his plea. Upon questioning by the court, defense counsel acknowledged that he had reviewed the amended information with Curtis and that he had explained "what the sequence of events amounts to." Curtis acknowledged he understood the charges were changed from first degree to second degree murder. The court reminded Curtis of the rights he waived by entering a guilty plea: the right to jury trial, the right to

confront witnesses, and the right to remain silent. Curtis advised the court he understood this waiver. The maximum penalty on both charges was explained, as was the right to appeal. Defense counsel then informed the court he had no objections to the change of plea and acknowledged he had explained the proposed plea bargain to Curtis and had allowed Curtis to make his own decision. Curtis acknowledged that he believed the facts as alleged in the amended information were true. He added, however, that he felt he was not responsible for his actions at the time of the alleged murder because he suffered from insanity. He was not advised by the court of the burden incumbent on the prosecution to prove his intent at the time of the murder beyond a reasonable doubt. Nor was he specifically told by the court that a plea of guilty would constitute a waiver of any defenses to the charges, including defenses based upon mental disease or defect.

Curtis pled guilty after the amended information was read to him. The court accepted the plea, stating that he was familiar with the psychiatric report from the Idaho Security Medical Facility. Curtis also entered, and the court accepted, a plea of guilty to the marijuana charge following an in-court reading of that information.

The record does not disclose that Curtis formally withdrew his insanity defense, other than by implication from his guilty plea. Nor did Curtis demand an evidentiary hearing to determine his mental competency to plead guilty or to be responsible for the alleged murder.

On May 19, the court imposed sentence upon Curtis following a lengthy sentencing hearing. Witnesses testified at the hearing regarding Curtis's mental condition, his history of mental illness, and his mental state during the period prior to and following the alleged murder. When analyzing the evidence for determination of a proper sentence, the district judge repeatedly remarked in various ways that he would have preferred to institutionalize Curtis in a mental institution, but that opportunity was taken away when the guilty plea was

entered. The court then imposed the fixed five year term to be followed by an indeterminate life term. The court's reasoning for this sentence was that Curtis needed a fixed period of institutionalization in order to receive the treatment necessary to help him overcome his mental illness. The court then felt an indeterminate life term was proper because the parole board could release Curtis within its discretion after a period of stability, if he evidenced good character and recovery.

I.

Curtis had filed a timely notice of intent to rely on the defense of mental disease or defect at the arraignment when he initially pled not guilty. He now contends the district court erred by not conducting a hearing to inquire into his mental capacity before accepting his subsequent guilty pleas.

▪ We note that a trial judge has no duty independently to inquire as to the competency of a defendant when the competency question has not been raised. *State v. Fuchs,* 100 Idaho 341, 346, 597 P.2d 227, 232 (1979); *see also Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Dictum in the *Fuchs* case states that the opposite is true, however, when the sanity issue has been raised—the judge must conduct a hearing to inquire as to the defendant's capacity before accepting a guilty plea. *Id.,* 100 Idaho at 346, 597 P.2d 232. The record here discloses the district court was presented with evidence and did specifically find that Curtis understood the consequences of his guilty plea and that he exhibited no psychosis or other mental illness at the time of the hearing.

▪ This determination was not made at a hearing held for the sole and specific purpose of inquiring into Curtis's competency. Nor was it made when Curtis originally withdrew his not guilty plea and entered a plea of guilty pursuant to the plea bargain negotiations. Rather, it was made at the sentencing hearing—which under Idaho practice occurs prior to entry of a judgment of conviction—where the district court cau-

tiously inquired into Curtis's competency and gave him an opportunity to reconsider his plea. Curtis declined to change his plea. At that time, the court heard the testimony of a psychiatrist who had examined Curtis immediately prior to the hearing and was familiar with Curtis's history of mental illness. This witness, when questioned by the court concerning Curtis's status on the day of this hearing, testified Curtis was rational, could understand the proceedings, and was capable of making an intelligent and reasonable decision regarding a plea to the crimes with which he was charged. Several other witnesses were also examined regarding Curtis's mental competency during the latter months of 1979. The court also reexamined Curtis regarding his understanding of the proceedings. Curtis stated that he understood the consequences of his guilty plea both at the time he originally pled and at the current proceedings. He stated he wanted to stand by the plea; that he realized he had an "incorrigible mental disease" that could be controlled through "structuring" and medication. The court then accepted the plea anew, recognizing Curtis exhibited no present indication of psychosis or other mental illness and was able to understand the sentence that would be imposed. The district court heard expert testimony on Curtis's competency to understand the consequences of his plea, the court examined Curtis thoroughly, and specifically determined he was competent to plead. We hold that Curtis received the functional equivalent of a competency hearing, at the sentencing proceeding, and that the court did not therefore err in accepting his plea when he was finally adjudicated as guilty without first conducting a hearing to inquire into his competency to plead guilty. *Pate v. Robinson, supra.*

## II.

The next issue raised by Curtis is concerned with the voluntariness and understanding of his pleas. The record indicates that at no time during the proceedings against Curtis did the court advise him of the effect of the alleged insanity defense on the state's burden of proving the element of intent, a requisite in a conviction to the reduced crime of second degree murder to which Curtis pled guilty. In light of his intention early in the proceedings to rely on the affirmative defense of mental disease or defect, Curtis argues that the failure of the court to inform him of the element of intent resulted in his plea being made not voluntarily and not with understanding. Thus, he contends his rights to due process, guaranteed by the United States Constitution, were violated.

It is a well-settled general proposition of law in Idaho that a plea of guilty cannot stand unless the record on appeal indicates in some manner that the plea was entered voluntarily and understandingly. *State v. Colyer,* 98 Idaho 32, 34, 557 P.2d 626, 628 (1976). A voluntary and understanding plea is indicated when the record, including reasonable inferences that can be drawn from the record, affirmatively shows that the plea was voluntary, that the defendant understood the consequences of pleading guilty, and that the defendant waived the right to jury trial, the right to confront his accusers, and the right to refrain from self-incrimination. *Id.* The record must also show that the defendant understood the possible maximum penalty that could be imposed. *Id.* at 36, 557 P.2d at 630.

It is not required that the court inform a defendant of the state's burden of proof, or that by pleading guilty, he waives defenses such as insanity or mental disability. *Colyer, supra,* 98 Idaho at 33 n. 1, 557 P.2d at 627; *State v. Thacker,* 98 Idaho 369, 370, 564 P.2d 1278, 1279 (1977).

In *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), the defendant had been charged with first degree murder. He pled guilty to a reduced charge of murder in the second degree; however, no formal charge of second degree murder was filed. The defendant was uneducated and of unusually low mental capacity. The nature of the charge of second degree murder was not explained to him either by the court or by his counsel. On

**562**

appeal, the United States Supreme Court held that the lack of a formal charge informing the defendant of the necessary elements of the crime—including the element of intent to commit murder—and the lack of explanation of the nature of the offense prevented the defendant's plea from being voluntary in the constitutional sense.

Consistent with *Henderson,* the Idaho Supreme Court has held that, in order for a guilty plea to be voluntary, a defendant must be informed of the intent elements requisite to the charged offense. *Sparrow v. State,* 102 Idaho 60, 61, 625 P.2d 414, 415 (1981); *State v. Bradley,* 98 Idaho 918, 575 P.2d 1306 (1978). In *Bradley,* this requirement was satisfied where the information containing a reference to the necessary elements was read to the defendant, and there was no showing that the defendant was not conversant with the English language or that he lacked normal intelligence and education. *Sparrow, supra,* 102 Idaho at 61, 625 P.2d at 415. In another case, *State v. Birrueta,* 98 Idaho 631, 570 P.2d 868 (1977), the Supreme Court held that the plea of guilty to second degree murder by a Mexican-American with a second grade education who spoke little English was not voluntary. The court said:

> It does not appear from the record that Birrueta knowingly and intelligently entered a guilty plea. Specifically it is not evident that he understood the crime to which he was pleading or waived his right against self-incrimination. It would be difficult to believe that Birrueta understood the crime he pleaded to when he consistently denied that he was guilty of all the elements of second degree murder. He may have a valid reason for claiming he lacked the intent to kill. In addition, the record does not indicate that the right against self-incrimination was ever explained to, understood or waived by Birrueta. As we stated in *Colyer,* those elements are essential for the acceptance of a guilty plea.

98 Idaho at 633, 570 P.2d at 870.

Here, contrary to *Birrueta* and *Henderson,* but more akin to *Bradley,* and consistent with the requirements of *Colyer,* the record shows that Curtis was a college graduate and had held managerial positions of responsibility in various areas of employment. The amended information filed with the court, charging deliberate and wilful second degree murder, and the information charging possession of marijuana were presented to Curtis and his counsel in open court. The court read the charging portions of those documents to Curtis. The court asked Curtis if he understood that the one charge had been amended from first degree to second degree murder. Curtis replied that he did. The court reviewed the rights explained in the arraignment proceedings on the original murder charge, including the right to remain silent and refrain from self-incrimination, the right to jury trial, and the right of confrontation and cross-examination. The various pleas that could be entered had been explained to him. Curtis acknowledged that he understood all of those rights and that he would waive those rights by entering a plea of guilty. The maximum penalty possible for each of the charges was explained to him. We hold that all requisites of a voluntary and understanding plea of guilty were met. *Colyer, supra.*

The judgments of conviction are affirmed.

BURNETT and SWANSTROM, JJ., concur.