695 P.2d 437

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Juan VASQUEZ, Defendant-Appellant.**

No. 14678.

Court of Appeals of Idaho.

Feb. 1, 1985.

Ronald Merlin Hart, Idaho Falls, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

Before WALTERS, Acting C.J., and HUNTLEY and OLIVER, Acting JJ., Special Panel.

WALTERS, Acting Chief Judge.

Juan Vasquez was charged with second degree murder. Pursuant to a plea bargain agreement Vasquez pled guilty to voluntary manslaughter and received an indeterminate sentence of four years. Vasquez appeals, contending his plea of guilty should not have been accepted by the trial court because the plea was not "voluntarily and knowingly" made. Particularly, Vasquez argues the trial court failed, before accepting his plea, to adequately inform him of (1) the nature of the charge against him; (2) the requisite intent required in voluntary manslaughter; (3) his right to confront witnesses and to refrain from self incrimination; and (4) the possibilities of parole. We find no error and affirm.

Rule 11(c) of the Idaho Criminal Rules provides:

Before a plea of guilty is accepted, the record of the entire proceedings, including reasonable inferences drawn therefrom, must show:

(1) The voluntariness of the plea.

(2) The defendant was informed of the consequences of the plea, including minimum and maximum punishments, and other direct consequences which may apply.

(3) The defendant was advised that by pleading guilty he would waive his right against compulsory self-incrimination, his right to trial by jury, and his right to confront witnesses against him.

(4) The defendant was informed of the nature of the charge against him.

(5) Whether any promises have been made to the defendant, or whether the plea is a result of any plea bargaining agreement, and if so, the nature of the agreement and that the defendant was informed that the court is not bound by any promises or recommendation from either party as to punishment.

In this case there are three relevant proceedings: Vasquez's initial arraignment and two hearings when he pled guilty to

voluntary manslaughter. At the arraignment, Vasquez acknowledged that he understood the proceedings against him and the court summarized the Information charging him with second degree murder. He was informed of the maximum penalty for that charge. He was told of his right to remain silent, to have a jury trial, to confront witnesses and to produce witnesses on his behalf. He was advised he did not have to testify nor could the state require him to do so. At this time Vasquez pled not guilty to the charge and a trial date was set.

Later, after an investigation by Vasquez's attorney and negotiations with the prosecutor's office, it was agreed that Vasquez would plead guilty to voluntary manslaughter and the prosecutor would recommend a sentence of four years. Thereafter a hearing was held for the change of plea. The court once again advised Vasquez of his right to a jury trial and that a jury trial would be waived by a plea of guilty. The court asked Vasquez whether he was being pressured or threatened to change his plea. Vasquez answered negatively. At this time there was a discussion of the manslaughter charge. While the court did not specifically explain the elements of voluntary manslaughter, both the prosecution and the court made reference to the definition of voluntary manslaughter which includes a killing resulting from a fight or quarrel.[1] The prosecutor explained in great detail the evidence the state had gathered and the witnesses he would call if a trial were held, indicating that the death occurred as a result of a fight between Vasquez and the decedent. The prosecutor disclosed there were three eyewitnesses to the fight. Furthermore, the prosecutor represented that a doctor would testify the death was caused either by stab wounds or by a blow to the victim's head "with a blunt object which caused a hole in the skull and a hematoma to rise on the opposite side from where the blow was struck." The

maximum penalty for manslaughter was discussed. After a short response by Vasquez's attorney disclosing he had been unable to locate any witnesses who could testify differently from the state's eyewitnesses, the court accepted Vasquez's plea of guilty. The charge was outlined to Vasquez by the court as follows:

> Now, Mr. Vasquez, Mr. Juan Vasquez, as to the charge of causing the death of [the decedent] by means that would fit the definition of Voluntary Manslaughter, are you ready to enter a plea to that charge at this time?

Two months later Vasquez was allowed to withdraw his guilty plea. He re-entered a plea of not guilty to second degree murder. Then, after several months of attempting to find evidence and witnesses on his behalf, Vasquez once again decided to change his plea to guilty of voluntary manslaughter. At this time the court explained to Vasquez he was waiving his right to a jury trial by pleading guilty and could be subject to incarceration in the Idaho State Penitentiary. The court asked Vasquez whether he understood the proceedings against him and whether he was being pressured into pleading guilty. Vasquez replied he was not pressured. The court reviewed the conditions of the plea negotiations with Vasquez and the prosecutor. Vasquez's attorney explained the reasons for the change in plea; chiefly the inability to locate witnesses on his client's behalf. Vasquez maintained he was innocent, however he felt unable to counter the evidence gathered by the prosecutor and for that reason he entered his plea of guilty to voluntary manslaughter. The plea was accepted and a sentence of four years was imposed.

The record of the entire proceedings in this case clearly shows Vasquez was advised of his right to a jury trial, his right against compulsory self-incrimination, and his right to confront witnesses against him.

---

1. Voluntary manslaughter is defined by statute as "the unlawful killing of a human being, without malice ... upon a sudden quarrel or heat of passion." I.C. § 18–4006. Subsequent to Vas-

quez's plea in this case, we have held that "voluntary manslaughter requires an intent to kill...." *See State v. Atwood,* 105 Idaho 315, 315, 669 P.2d 204, 208 (Ct.App.1983).

Vasquez was informed of the consequences of his guilty plea, i.e., the maximum penalty which could be imposed. The plea bargaining agreement was discussed by the court and Vasquez was informed that the court was not bound by the agreement. This information satisfies subsections (2), (3), and (5) of I.C.R. 11(c).

As to voluntariness of the plea, the Idaho Supreme Court held in *State v. Colyer*, 98 Idaho 32, 557 P.2d 626 (1976), that a plea is voluntarily made if the record shows the defendant understood the nature of the charges and was not coerced; waived his right to self-incrimination, to confront witnesses and to have a jury trial; and the defendant understands the consequences of pleading guilty, i.e., the defendant knows the maximum possible penalty which could be imposed. *Id.* at 34, 557 P.2d at 628. After *Colyer*, the Idaho Supreme Court also required that "in order for a guilty plea to be voluntary, a defendant must be informed of the intent elements requisite to the charged offense." *Sparrow v. State*, 102 Idaho 60, 61, 625 P.2d 414, 415 (1981).

▬ In this case the court specifically asked Vasquez whether he was conversant in the English language and understood the proceedings against him, to which Vasquez answered affirmatively. Although the element of intent was not specifically defined, the definition of manslaughter was discussed and the evidence available to the state to prove the homicide was disclosed. A reasonable inference can be drawn from these discussions that Vasquez had been adequately advised of the nature of the charge and the requisite intent required for voluntary manslaughter.

▬ Finally, Vasquez contends his plea of guilty was not voluntary because the court failed to explain "the possibilities of parole" before accepting the guilty plea. The only authority cited by Vasquez in support of that proposition is *State v. Goodrich*, 104 Idaho 469, 660 P.2d 934 (1983). In *Goodrich* our Supreme Court reversed a trial court order which had summarily set aside a guilty plea. The Court ruled that an evidentiary hearing should have been held before determining the defendant's petition to set aside the plea. The Court noted the defendant had alleged, among other grounds, that "she was not properly informed of the consequences of her plea, including possibilities of parole." 104 Idaho at 472, 660 P.2d at 937. The Court said: "[Her] knowledge of her rights, and her knowing, intelligent and voluntary waiver of her rights, were all contested issues of fact requiring an evidentiary hearing to resolve. It was error for the trial court to grant the petition, since there were questions of material fact presented." *Id.*

It is clear our Supreme Court did not rule that failure to advise of the possibility of parole, standing alone, was sufficient basis for setting aside a guilty plea as involuntarily made. In the context of Goodrich's case, the lack of such advice was only one of several factors which could be explored, during an evidentiary hearing, to determine the voluntariness of a guilty plea. In a more recent case, one Justice of our Supreme Court urged that a defendant should be fully informed of statutory restrictions on parole eligibility in order to guarantee the defendant's plea of guilty was knowingly and voluntarily made. *See State v. Gee*, 107 Idaho 991, 695 P.2d 376 (1985), Bistline, J., specially concurring. It appears that the position advocated by Justice Bistline does not express the view of a majority of the Idaho Supreme Court.

Absent a more precise ruling by our Supreme Court, we decline to impose an absolute requirement that parole possibilities must be explained to a defendant in every case before acceptance of a plea of guilty. We hold the acceptance of the plea in this case was not rendered defective as a result of failing to explain possibilities of parole to Vasquez.

The judgment of conviction for voluntary manslaughter is affirmed.

HUNTLEY and OLIVER, Acting JJ., concur.