757 P.2d 211

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Gorgonio CARRASCO, Defendant–Appellant.**

**No. 16877.**

Court of Appeals of Idaho.

May 2, 1988.

Petition for Review Granted June 23, 1988.

Raymundo G. Pena, Rupert, for defendant-appellant.

Jim Jones, Atty. Gen., David R. Minert, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Gorgonio Carrasco pled guilty to two counts of unlawful delivery of controlled substances, heroin and cocaine, in violation of I.C. § 37–2732(a)(1)(A). The court found Carrasco guilty, and, following a sentencing hearing, ordered that Carrasco be committed to the custody of the Board of Correction for two concurrent indeterminate terms not to exceed thirty years. Carrasco then moved to withdraw his plea. The court denied the motion. Thereafter, a motion to reduce the sentence was also denied. The court entered an amended judgment of conviction. Carrasco appeals from that judgment and the denial of his postconviction motions. We affirm.

In essence, Carrasco's appeal raises two issues. He asserts that his plea was not knowingly and voluntarily given. And, he asks us to review his sentence for abuse of discretion by the sentencing court.

## I

■ We begin by reviewing the plea. When a defendant enters a plea of guilty, the defendant waives the privilege against self-incrimination, the right to a jury trial and the right to confront one's accusers. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Because such fundamental rights are involved, a valid waiver will not be presumed but must be demonstrated by the record. *Id.* Before a trial court may accept a plea of guilty, the proceeding must show that the plea is voluntary, the defendant has been informed of the direct consequences of the plea including minimum and maximum punishments, that a waiver of the above mentioned rights will result, and of the nature of the charges. The court must determine whether any promises have been made to the defendant, whether the plea resulted from a bargained agreement, the nature of any agreement, and whether the defendant is aware the court is not bound by any promises or recommendation regarding punishment. I.C.R. 11(c).

A motion to withdraw a plea is submitted pursuant to I.C.R. 33(c). After sentencing, the court may set aside a judgment of conviction and permit a defendant to withdraw the plea to correct a manifest injustice. I.C.R. 33(c). This strict standard is applied following sentencing to insure that the accused does not plead guilty merely to test the weight of potential punishment and then to withdraw the plea if the sentence is unexpectedly severe. *State v. Simons*, 112 Idaho 254, 731 P.2d 797 (Ct.App.1987); *State v. Freeman*, 110 Idaho 117, 714 P.2d 86 (Ct.App.1986). A motion to withdraw a plea of guilty is addressed to the sound discretion of the court. *State v. Simons, supra; State v. Freeman, supra.* We look to the whole record to determine whether it is manifestly unjust to preclude the defendant from withdrawing his plea. *State v. Simons, supra.*

Here, Carrasco contends that he was not fully informed of his rights or of the consequences of a guilty plea. Carrasco admits that he was advised as to the possible punishment and his rights at his arraignment, but contends that—because two months had elapsed—the court should have repeated this information. He also asserts that the court failed to establish a sound factual basis for the plea.

The record reveals that prior to accepting Carrasco's plea the court inquired of Carrasco's attorney regarding the plea agreement and regarding the attorney's opportunity to "visit with Mr. Carrasco regarding this matter." Counsel indicated that it had been agreed that two "possession with intent to deliver" counts would be dismissed and that ample opportunity had been provided to meet with his client. In response to questions communicated through an interpreter, Carrasco indicated that it was his intention to plead guilty, that he understood that the two "possession" charges would be dismissed, that no other promises or agreements were involved, that he had ample opportunity to discuss this matter with his attorney, and that he wanted to plead guilty "Because I feel guilty" (interpreter's phrase).

■ The factual basis for a plea may be determined from the complete record, including preliminary hearing transcripts. *Fowler v. State*, 109 Idaho 1002, 712 P.2d 703 (Ct.App.1985). But, there is no blanket requirement that a court establish a factual basis for a guilty plea. *State v. Coffin*, 104 Idaho 543, 661 P.2d 328 (1983). Such an inquiry should be made if a guilty plea is coupled with an assertion of innocence or lack of memory, or if the court possesses information raising obvious doubt as to guilt. *State v. Hoffman*, 108 Idaho 720, 701 P.2d 668 (Ct.App.1985); *Schmidt v. State*, 103 Idaho 340, 647 P.2d 796 (Ct.App. 1982). None of these exceptions is applicable to the case before us. On the contrary, our review of the transcripts of the suppression and change of venue hearings indicates that the court had no reason to doubt the sincerity of Carrasco's plea and no information putting Carrasco's guilt in question.

■ We turn next to the court's failure to advise Carrasco immediately prior to accepting his pleas. A plea of guilty cannot stand unless the record on appeal indi-

cates in some manner that the plea was entered voluntarily, knowingly and intelligently. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Colyer*, 98 Idaho 32, 557 P.2d 626 (1976); *State v. Curtis*, 103 Idaho 557, 650 P.2d 699 (Ct.App.1982). The validity of a plea is to be determined by considering all of the relevant surrounding circumstances contained in the record. *See State v. Colyer, supra.* A voluntary and understanding plea is indicated when the record, including reasonable inferences that can be drawn from the record, affirmatively shows that the plea was voluntary, that the defendant understood the consequences of pleading guilty, and that the defendant waived the right to a jury trial, the right to confront his accusers, and the right to refrain from self-incrimination. *State v. Curtis, supra.* The record must also show that the defendant understood the possible minimum and maximum penalties that could be imposed. *Id.*

[7] As Carrasco readily admits, the instant record reveals that he was fully informed of his fundamental rights and the possible penalties at his arraignment. In response to the arraigning judge's inquiry, he indicated that he had no questions. Other than a language barrier, no suggestion has been made that Carrasco was incapable of grasping the import of the information provided. Carrasco, a non-English speaker, was provided with interpreters throughout the proceedings. No allegation has been made that interpretations or translations were inaccurate or deficient. The district court apparently was not persuaded that Carrasco was unable to understand the court's litany.

Only at his Rule 33 hearing, after an apparently unexpectedly harsh sentence was imposed, did Carrasco indicate that he didn't remember being informed of his rights. He also testified that he didn't think he understood the consequences of a plea of guilty. He offered no defense to the charges.

The record of the entire proceeding clearly shows that Carrasco was advised at his arraignment of his right to a jury trial, his right against self-incrimination, and his right to confront witnesses against him. He was informed of the minimum and maximum penalties which could be imposed. Prior to entering his plea, Carrasco was given the opportunity to consult with counsel provided by the state. We find nothing in our rules or the Constitution which requires a complete contemporaneous advisement or reminder to validate a guilty plea. *See, e.g., State v. Vasquez*, 107 Idaho 1052, 695 P.2d 437 (Ct.App.1985). We hold that no injustice is manifested by this record. Therefore, the court did not err by denying Carrasco's motion to withdraw his plea.

## II [*]

[8] Carrasco also contends that, under the circumstances, the judge abused his discretion by pronouncing a thirty-year indeterminate sentence and by declining to reduce the sentence when requested to do so pursuant to I.C.R. 35. Both the length of a sentence and the decision whether to reduce a sentence rest in the sound discretion of the sentencing court. *See State v. Lopez*, 106 Idaho 447, 680 P.2d 869 (Ct.App.1984); *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). Carrasco could have been sentenced to a maximum term of life in prison for delivery of these substances. I.C. § 37–2732(a)(1)(A). Absent a clear abuse of discretion, a sentence or a decision to deny reduction will not be disturbed if the sentence imposed is within the maximum period allowed by statute as punishment for the particular crime. *State v. Araiza*, 109 Idaho 188, 706 P.2d 77 (Ct.App.1985); *State v. Toohill, supra.* Our scope of review includes all information submitted at the original sentencing hearing and at the subsequent hearing held on the motion to reduce. *State v. Araiza, supra.*

[9] When reviewing indeterminate sentences, absent a contrary indication, we deem the length of confinement to be one-third of the face amount of the sentence.

---

[*] The views expressed in this part of the opinion are those of the author. The views of a majority of the Court are set forth in the separate opinion of Burnett, J., *post.*

*See State v. Toohill, supra.* Therefore, for purposes of appellate review the length of confinement in the instant case is treated as ten years. In *Toohill,* we explained that a term of confinement is reasonable to the extent it appears necessary at the time of sentencing to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation and retribution. A sentence longer than necessary for these purposes is unreasonable and may represent a clear abuse of discretion. *Id.* These criteria also apply to rulings on motions to reduce sentences under Rule 35. *State v. Lopez, supra.*

Here, Carrasco was convicted of delivering, in concert with two others, a large quantity of dangerous drugs. According to the state's investigator, two pounds of black tar heroin and two pounds of cocaine were seized. Apparently, Carrasco had traveled to southern California to purchase the drugs at the request of an undercover agent of the state posing as a drug buyer. According to the investigator, Carrasco and his companions returned to Idaho and met with the agent to repackage the drugs. Carrasco and his companions then transported the drugs to Rexburg, where they were to exchange them for weapons and currency. At that point, Carrasco and his companions were arrested. For this crime, the prosecutor recommended a ten-year fixed term of incarceration.

In mitigation, Carrasco calls our attention to his lack of a criminal record and his courier role in the crime.[1] Carrasco presented evidence indicating that he had no prior criminal arrests or convictions, either in this country or in Mexico. Family, acquaintances, and local government officials in Mexico averred as to his good reputation. Carrasco expressed his remorse

and vowed to avoid difficulties with the law so he might stay with his wife and children in the future. He denied having dealt in illegal drugs in the past.

Nonetheless, the court sentenced Carrasco to a thirty-year indeterminate term. The sentencing judge announced:

This Court has very carefully gone over each of the requirements of the statute Mr. Smith [a co-defendant's counsel] has cited to the Court and weighed each one of those items both in mitigation of sentence and in opposition to mitigation or to exacerbation of sentence. This case does not present itself as one fit for probation and the matters in mitigation of sentence do not even approach the weight of those in aggravation.

When denying the motion to reduce sentence, the court further explained:

The Court has heard argument of counsel for these two Motions this afternoon, but I fail to see anything in those arguments that give any indication to the Court that these sentences should be reduced. They are serious offenses, and as counsel indicated in their argument, the ultimate consequences of all of these drugs could have been absolutely devastating to the entire area around Rexburg, and even down to Idaho Falls.

We recognize that this is a rather harsh sentence for a first offender. *Compare State v. Garza,* 109 Idaho 40, 704 P.2d 944 (Ct.App.1985) (ten-year fixed sentence for heroin delivery by repeat offender, held not to be excessive). However, Carrasco admitted to being involved in the delivery of a large quantity of controlled substances. As the sentencing judge emphasized, the serious impact of heroin and cocaine on our society is well-documented. Although apparently the funds for this purchase and

---

1. The presentence report, which we requested be added to the appeal record by augmentation, reveals that Carrasco expected to realize $10,000.00 from the transaction. He intended to invest this sum in a home in Mexico. He alleged that a fourth party initiated purchase of the drugs, but Carrasco acknowledged being aware of the serious nature of the crime. Apparently this transaction resulted in a federal charge of conspiracy to export firearms (sixteen

M–16 rifles were involved in this transaction). The federal charge was still pending when Carrasco was sentenced. According to a police investigator, prior to the arrest Carrasco had made two other heroin deliveries and one cocaine delivery, receiving a total of $5,000.00 for those acts. Aside from two deportations in 1976, the report reveals no other social or criminal delinquency.

the delivery were arranged by the agent, Carrasco did not choose to raise a defense of entrapment. Rather, he apparently was a willing and principal participant in the transaction. Retribution and deterrence are two of the objectives of punishment by confinement. On this record, I cannot say that the sentencing judge clearly abused his discretion.

In summary, pursuant to Part I of this opinion, we affirm the district court's order denying the motion to withdraw the plea. Pursuant to the separate opinion appearing *post*, the judgment of conviction is hereby modified to impose concurrent, indeterminate sentences of twenty years each. The case is remanded for entry of the modified judgment.

BURNETT, Judge, with whom SWANSTROM, Judge, concurs.

▮ We agree with the lead opinion's analysis of the plea-withdrawal issue. However, we are unable to uphold the thirty-year indeterminate sentences. Although we commend the sentencing judge for his concern about illicit drugs in Idaho, and although we share his view that substantial imprisonment is warranted in this case, we believe the thirty-year sentences are excessive in light of the applicable sentencing standards and the facts portrayed in this record.

The standards governing indeterminate sentences are set forth in *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). In that case we noted that our Supreme Court has articulated four objectives of criminal punishment: protection of society, deterrence, rehabilitation and retribution. We also noted that the American Bar Association, in its Standards Relating to Sentencing Alternatives and Procedures § 2.2 (Approved Draft 1968), has enunciated the following general principle: "The sentence imposed in each case should call for the minimum amount of custody or confinement which is consistent with [sentencing objectives]...." Our opinion in *Toohill* synthesized the ABA principle and the sentencing objectives articulated by our Supreme Court, as follows:

[A] term of confinement is reasonable to the extent that it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. A sentence of confinement longer than necessary for these purposes is unreasonable.

103 Idaho at 568, 650 P.2d at 710.

Given this standard, our task in the present case is to identify the objectives served by the thirty-year sentences and to determine whether the duration of confinement under these sentences is greater than necessary to accomplish the objectives. Unfortunately, the sentencing judge did not specify his objectives when pronouncing the thirty-year sentences, nor did he do so when denying Carrasco's subsequent motion to reduce the sentences. Rather, he simply stated that he would not grant probation under I.C. § 19–2521 and he commented that the case would have been a "tragedy" if illicit drugs had found their way into the general population. We surmise from these remarks that the judge intended the thirty-year sentences to protect society by deterring similar crimes in the future and, perhaps, by exacting retribution for the potentially serious consequences of the offenses committed.

To be sure, a substantial period of imprisonment can be justified upon these grounds. Moreover, a judge has discretionary power to determine the length of confinement required to satisfy his sentencing objectives. As we acknowledged in *Toohill:*

Such determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ. An appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the [applicable] criteria.

103 Idaho at 568, 650 P.2d at 710. Nevertheless, *it remains our responsibility at the appellate level to review the facts indepen-*

dently, focusing not only upon the nature of the offense but also upon the character of the offender. *E.g., State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

Here, the full dimensions of Carrasco's conduct are portrayed obscurely in the record before us. It appears that Carrasco participated as a willing courier in an illicit drug transaction.[1] The transaction was instigated by undercover government agents. The agents gave Carrasco (and a codefendant named Rodriquez) approximately $140,000 in cash to buy illicit drugs in Southern California. Carrasco apparently understood that he would later receive approximately $10,000 for his help in obtaining the drugs and transporting them to Idaho. The record does not tell us how the government agents became acquainted with Carrasco and Rodriquez, nor does it disclose why the agents decided to involve these particular individuals in the transaction. Although the presentence report contains a terse reference to earlier transactions, both Carrasco and Rodriquez testified without contradiction that they had engaged in no transactions except with a government agent known as "Chewy." When Carrasco's attorney attempted to inquire about prior drug transactions, the prosecutor objected and asked that the sentencing hearing focus on the offenses to which Carrasco had pled guilty.[2]

With respect to the character of the offender, the record indicates that Carrasco is one of eleven children born to a farming family in Durango, Mexico. When the instant offenses occurred, he was twenty-nine years old. He made his living as a general laborer. He was not a drug user. He had no record of prior criminal convictions of any kind in the United States or in Mexico. The chief of police in Durango furnished a written "letter of good conduct" to which fifty-one other persons added their signatures. Carrasco presented evidence that he was married and had two small children living in Durango. He stated that he had intended to use money from the drug transactions to buy a home in Mexico. He acknowledged the wrongfulness of the transaction and he openly expressed contrition for his acts.

Upon this record, the prosecutor recommended that Carrasco be imprisoned for a fixed term of ten years.[3] Under such a fixed-term sentence, Carrasco would have been required to serve the full ten years in confinement unless he received a discretionary award of good time for exceptionally meritorious service. (The virtually automatic "formula" type of good time was abolished by the Legislature on July 1, 1986, prior to the commission of the instant offenses. *See* I.C. § 20–101A.) However, the district judge went a step further. He imposed concurrent, indeterminate sentences of thirty years, thereby compelling Carrasco to spend at least ten years in confinement and creating the possibility of

1. Although Carrasco was charged with four counts of violating Idaho's controlled substances law, each count was related to the same general transaction. Carrasco pled guilty to the counts alleging delivery of heroin and cocaine. The state dismissed the other counts, which simply set forth the included offenses of possession with intent to deliver.

2. The record is similarly obscure with respect to the role played in the transaction by certain M–16 rifles. Carrasco acknowledged that the rifles were involved in the transaction, but he testified without refutation that they "were not [his] idea." There is no indication that Carrasco owned, or expected to receive and use, the weapons. Neither does the record reveal the intended destination of the weapons.

If the state had shown Carrasco to be the moving force in a scheme to provide arms to drug dealers, it would have cast an ominous shadow upon his conduct. However, the state offered no such proof. To the contrary, the prosecutor focused his sentencing arguments upon the potential impact of illicit drugs on the community. The district judge adopted the same approach, saying nothing about the M–16 rifles.

In any event, it appears that federal firearm charges were pending against several persons, including Carrasco. If Carrasco were eventually found guilty on those charges, the federal court could add an increment of punishment appropriate to Carrasco's degree of involvement with the M–16s. Therefore, the focus of the instant appeal is limited to punishment for Carrasco's delivery of the controlled substances.

3. Although the prosecutor spoke of a "sentence" in the singular, he apparently intended the ten-year fixed term to embrace both offenses to which Carrasco had pled guilty. The prosecutor did not ask for consecutive sentences.

additional confinement for two more decades.[4]

In our view, these sentences represent an unduly harsh sanction for an individual who—so far as the record shows—has no prior criminal record, was of good character before his involvement in these drug transactions, and whose participation in the transactions was encouraged by offers of large sums of money from government agents. The inducement by government agents, does not, of course, excuse Carrasco's criminal responsibility for his conduct; but it does represent a factor in mitigation of his sentences.

The sentences imposed here are longer than reasonably necessary to deter similar conduct in the future, to exact retribution, or to protect society. Indeed, the sentences exceed the stiffest penalty our Court has ever reviewed in a drug case— even for a repeat offender. *See State v. Garza*, 109 Idaho 40, 704 P.2d 944 (Ct.App. 1985) (affirming ten-year fixed sentence, with approximately three and one-third years of good time available under then-existing "formula" statute, for third-time offender convicted of delivering heroin).

We believe that an indeterminate period of twenty years is the heaviest sanction appropriate to Carrasco and his conduct, as portrayed in this record. Even when so modified, the concurrent sentences represent a stiff sanction. They convey a clear message that Idaho does not tolerate drug trafficking. But at the same time, the modified sentences will give correctional authorities greater flexibility in granting Carrasco a parole, if and when he earns it.

The district court is directed to modify the judgment accordingly.

---

**4.** An indeterminate sentence prescribes the outer limit of imprisonment, leaving correctional authorities to decide when to grant parole and when to discharge the prisoner. Since February 1, 1987, Idaho judges have been required to specify that portion of a sentence which must be served in confinement prior to eligibility for parole or discharge. (See the present version of I.C. § 19–2513, known as the Unified Sentencing Act.) However, because the offenses here occurred in August, 1986, the district judge was not required to specify a minimum period of confinement. Nevertheless, at times pertinent to this case, I.C. § 20–223 provided that at least ten years of any thirty-year indeterminate sentence must be served prior to parole eligibility.