787 P.2d 281

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Gorgonio CARRASCO, Defendant–Appellant.**

No. 17582.

Supreme Court of Idaho.

Feb. 9, 1990.

Raymundo G. Pena, Rupert, for defendant-appellant.

Honorable Jim Jones, Idaho Atty. Gen., Lynn E. Thomas, Sol. Gen., argued, Boise, for plaintiff-respondent.

BOYLE, Justice.

Gorgonio Carrasco, pled guilty to two counts of unlawful delivery of controlled substances, heroin and cocaine, in violation of I.C. § 37–2732(a)(1)(A). The court found Carrasco guilty, and following a sentencing hearing ordered that Carrasco be committed to the custody of the Board of Corrections for two concurrent indeterminate terms not to exceed thirty years. Carrasco then unsuccessfully moved to withdraw his plea, and thereafter a motion to reduce the sentences was also denied. The court entered an amended judgment of conviction, and Carrasco appealed from that judgment and the denial of his post-conviction motions. The Court of Appeals modified the sentence, remanding the case for entry of the modified judgment, and upheld the denial of the motion to withdraw the guilty plea. At this time the sole issue on review is whether Carrasco's guilty plea was given knowingly and voluntarily.

Considering the proceedings as a whole, we hold that the pleas entered by Carrasco were not entered knowingly, voluntarily or intelligently. Accordingly, we reverse the order denying the motion to withdraw the plea and remand for trial.

## I.

When a defendant enters a plea of guilty, the defendant waives, among others, the following rights of constitutional dimension: the privilege against compulsory self-incrimination, the right to a jury trial and the right to confront one's accusers. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Fundamental rights are involved, and a valid waiver will not be presumed but must be demonstrated by the record. *Id.* I.C.R. 11(c) provides:

(c) Acceptance of plea of guilty. Before a plea of guilty is accepted, *the record of the entire proceedings,* including reasonable inferences drawn therefrom, *must show:*

(1) The *voluntariness* of the plea.

(2) The defendant was *informed of the consequences* of the plea, including *minimum and maximum punishments,* and other direct *consequences* which may apply.

(3) The defendant was advised that by pleading guilty he would *waive his right against compulsory self-incrimination,* his *right to trial by jury,* and his *right to confront witnesses* against him.

(4) The defendant was informed of the *nature of the charge* against him.

(5) Whether *any promises* have been made to the defendant, or whether the plea is a result of any *plea bargaining* agreement, and if so, the nature of the agreement and that the defendant was informed that the *court is not bound by any promises* or recommendation from either party as to punishment. (Emphasis added.)

Additionally, the court must determine whether any promises have been made to the defendant, whether the plea resulted from a bargained agreement, the nature of the agreement, and whether the defendant is aware the court is not bound by any promises or recommendation regarding punishment. *State v. Colyer,* 98 Idaho 32, 36, 557 P.2d 626, 630 (1976).

Before a trial court accepts a plea of guilty in a felony case,[1] the record must

---

1. The requirements set forth herein apply only to accepting pleas of guilty in felony cases. The provisions of I.C. § 19–1502 and Rule 6(d) of the Misdemeanor Criminal Rules continue to be

show that the plea has been made knowingly, intelligently and voluntarily, and the validity of a plea is to be determined by considering all the relevant circumstances surrounding the plea as contained in the record. *State v. Colyer*, 98 Idaho 32, 557 P.2d 626 (1976). As provided in *Colyer*, whether a plea is voluntary and understood by the defendant requires inquiry into three basic areas. The first is whether the defendant's plea was voluntary in the sense that he understood the nature of the charges and was not coerced. Secondly, it must be determined whether the defendant knowingly and intelligently waived his rights to a jury trial, to confront his accusers, and to refrain from incriminating himself. Thirdly, it must be determined whether the defendant understood the consequences of pleading guilty. 98 Idaho at 34, 557 P.2d at 628 (1976); *see also State v. Howell*, 104 Idaho 393, 659 P.2d 147 (1983). In *Colyer* we stated "the voluntariness of a guilty plea can be determined by considering *all* the relevant surrounding circumstances *contained in the record.*" (Emphasis added.) 98 Idaho at 34, 557 P.2d at 628; *see also* I.C.R. 11(c).

## II.

 A motion to withdraw a plea is governed by I.C.R. 33(c).[2] Generally, a motion to withdraw a plea of guilty may be made only before sentence is imposed or imposition of sentence is suspended. However, after sentencing, the court may set aside a judgment of conviction and permit a defendant to withdraw the plea to correct a manifest injustice. I.C.R. 33(c). A stricter standard is applied to motions for plea withdrawal following sentencing to insure that the accused does not plead guilty merely to test the weight of potential punishment and then to withdraw the plea if the sentence is unexpectedly severe. *State v. Simons*, 112 Idaho 254, 731 P.2d 797 (Ct.App.1987); *State v. Freeman*, 110 Ida-

ho 117, 714 P.2d 86 (Ct.App.1986). A motion to withdraw a plea of guilty is addressed to the sound discretion of the trial court, *State v. Simons*, 112 Idaho at 256, 731 P.2d at 799; *State v. Freeman*, 110 Idaho at 121, 714 P.2d at 90, and such discretion should be liberally exercised. *State v. Martinez*, 89 Idaho 129, 138, 403 P.2d 597, 603 (1965); *see also State v. Creech*, 109 Idaho 592, 594, 710 P.2d 502, 504 (1985), citing *Kienlen v. United States*, 379 F.2d 20, 24 (10th Cir.1967).

 The standard for review on appeal in cases where a defendant has attempted to withdraw a guilty plea is whether the district court abused its discretion in denying the motion. *State v. Ballard*, 114 Idaho 799, 761 P.2d 1151 (1988). As noted in *Ballard*, 114 Idaho at 801, fn.2, 761 P.2d 1153, fn. 2; I.C.R. 33(c) is the same as Federal Rule 32(d), therefore federal case law is both helpful and relevant to the resolution of these issues. Federal case law clearly establishes that even presentence withdrawal of a guilty plea is not an automatic right, *United States v. Barker*, 514 F.2d 208, 221 (D.C.Cir.1975); *Goo v. United States*, 187 F.2d 62 (9th Cir.1951), and that the defendant has the burden of proving that the plea should be allowed to be withdrawn. *Everett v. United States*, 336 F.2d 979, 984 (D.C.Cir.1964). The standard of review in these cases is an "abuse of discretion" standard, *United States v. Rasmussen*, 642 F.2d 165, 167 (5th Cir. 1981), and prejudice to the state is not a necessary finding for rejection of a motion to withdraw plea. *United States v. Rasmussen*, 642 F.2d at 168. We look to the whole record to determine whether it is manifestly unjust to preclude the defendant from withdrawing his plea. *State v. Simons*, 112 Idaho at 256, 731 P.2d at 799.

## III.

 At the time of his arrest, Carrasco was a twenty-nine-year-old citizen of Du-

applicable in accepting guilty pleas in misdemeanor cases.

**2.** I.C.R. 33(c) provides:
(c) Withdrawal of plea of guilty. A motion to withdraw a plea of guilty may be made only

before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

rango, Mexico. He neither spoke nor understood the English language, and had no prior arrests in the United States or Mexico. Carrasco and two accomplices were each charged with two counts of unlawful delivery of a controlled substance, and two counts of unlawful possession of a controlled substance with the intent to deliver.

Carrasco contends that he was not fully informed of his rights or of the consequences of a guilty plea. Carrasco acknowledges that he was advised as to the possible punishment and his rights at the initial district court arraignment, but contends because two months had elapsed, that the court should have repeated this information at the time of his change of plea. We reject that argument as having no substantial basis in the law, however, considering the record as a whole, we conclude that Carrasco's pleas were not entered with an understanding of his rights and the consequences of a guilty plea.

Carrasco's initial arraignment took place on September 18, 1986.[3] Carrasco and his two accomplices were present and addressed simultaneously by the district judge. At this time the court informed Carrasco and his accomplices of the penalties for each charge. When asked if he understood the penalty that could be imposed if he were found guilty, Carrasco replied "yes." The district court then briefly stated the elements for each count and asked if Carrasco understood each charge. Again Carrasco replied affirmatively. The trial court then advised the defendants of their constitutional rights, including the right to a jury trial, the right against self-incrimination, the right to confront one's accusers, and was informed that a plea of guilty would result in a waiver of the above-mentioned constitutional rights. Following the trial court's recitation of these rights, the district judge asked the three men, simultaneously, if they had any questions. The trial court transcript reveals that Carrasco made no response whatsoever to this inquiry.

Thereafter, Carrasco entered a plea of "innocent" to each count.

At his initial district court arraignment the record is clear that Carrasco was advised of his right to a jury trial, his right against self-incrimination, and his right to confront witnesses against him. He was also informed of the minimum and maximum penalties which could be imposed. However, in response to the arraigning judge's inquiry if he understood, the record reveals that Carrasco made no response.

The court transcript of the second hearing at which Carrasco pled guilty reveals the following limited colloquy:

The Court: Mr. Carrasco, do you understand any English?

Defendant Carrasco: No.

The Court: Mr. Hoopes, would you tell the Court what agreement has been made regarding your client, Mr. Carrasco?

Mr. Jack Hoopes: Yes, Your Honor. It is my understanding that my Defendant has entered into an agreement that he would plead guilty to Counts I and IV of the charges set against him on the condition that Counts II and III were dismissed.

The Court: Do you feel that you have had ample opportunity to visit with Mr. Carrasco regarding this matter?

Mr. Jack Hoopes: Yes. I have spent several hours with him.

The Court: Do you feel in your own mind that he really understands exactly what is being done?

Mr. Jack Hoopes: Yes, I do.

The Court: No question in your mind?

Mr. Jack Hoopes: No question.

The Court: Marina [the interpreter], would you inquire of Mr. Carrasco if it is his intention to enter a plea of guilty to Count I charging him with Unlawful Delivery of Heroin and Count IV of Unlawful Delivery of Cocaine?

Defendant Carrasco: Yes.

---

3. The court minute on arraignment, filed September 9, 1986, is dated September 8, 1986. However, the reporter's transcript on appeal,

filed February 18, 1988, states, presumably incorrectly, that the date of arraignment was September 18, 1986.

The Court: And would you also ask him if it is his understanding that upon his plea of guilty to these two Counts that Counts II and III will then be dismissed by the State?

Defendant Carrasco: Yes.

The Court: Would you ask Mr. Carrasco if any promises or any agreements have been entered into regarding his plea of guilty other than what we have already discussed?

Defendant Carrasco: No.

The Court: Would you ask him if he feels he has had ample opportunity to discuss this matter with his attorney?

Defendant Carrasco: Yes.

The Court: Would you then ask him to please tell us in his own words why he wants to plead guilty to these two Counts?

Defendant Carrasco: Because I feel guilty.

At this change of plea arraignment the colloquy between the district judge and Carrasco consisted of less than a single page in the court reporter's transcript. There was no mention of any constitutional rights or the waiver of such, no mention of the possible length of prison terms, or the fact that by pleading guilty Carrasco waived all possible defenses. A plea of guilty cannot stand unless the record of the entire proceedings on appeal indicates that the plea was entered voluntarily, knowingly and intelligently. *See Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Colyer,* 98 Idaho 32, 557 P.2d 626 (1976). In *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the United States Supreme Court held that the trial judge must personally ascertain from the defendant whether he understood the nature of the charges against him. A judge cannot assume from the fact that the defendant had been informed of the consequences of his plea and that he understood the nature of the charges.

■ Idaho law requires that on appeal voluntariness of the guilty plea and waiver be reasonably inferred from the record as a whole. *State v. Peterson,* 98 Idaho 706,

571 P.2d 767 (1977); *State v. Birrueta,* 98 Idaho 631, 570 P.2d 868 (1977); *State v. Stevens,* 98 Idaho 131, 559 P.2d 310 (1977); *State v. Colyer,* 98 Idaho 32, 557 P.2d 626 (1976); I.C.R. 11(c). In *State v. Watson,* 99 Idaho 694, 702, 587 P.2d 835, 843 (1978), we stated:

> From the colloquy outlined above, it cannot be said that Watson's "waiver or understanding can be fairly inferred from the record as a whole." [*Colyer,* 98 Idaho] at 34, 557 P.2d at 628. We could perhaps hold that Watson, represented by counsel and fresh from a trial at which he had personally been present, had been thereby made acquainted with the full panoply of his constitutional rights, and that the entering of his guilty pleas was knowingly and intelligently done. We could observe also that his counsel was present, and we could assume that counsel had adequately advised him as *Colyer* requires of district courts. And we *could* be correct in so doing. We decline to do so, not so much on the basis of the facts of the instant case, but with a view toward the effect of such a precedent on the countless number of cases yet to come before district courts. We cannot say which of the various defendants with varying intelligences and with diverse criminal encounters may be knowledgeable of the law and which may not. What was said in *Colyer* requires that on motion being made upon remand, Watson's guilty pleas must therefore be set aside, with leave to plead anew.

■ In Idaho, it is well settled that the trial court is not specifically required to follow any prescribed litany or to enumerate rights which a defendant waives by pleading guilty, so long as the record as a whole, and all reasonable inferences drawn therefrom, affirmatively show that the plea was made voluntarily, knowingly, and intelligently. *State v. Colyer,* 98 Idaho 32, 557 P.2d 626 (1976); I.C.R. 11.

■ In *Carrasco I,* the Idaho Court of Appeals correctly stated "[w]e find nothing

in our rules or the Constitution which requires a complete contemporaneous advisement or reminder to validate a guilty plea." *State v. Carrasco,* 114 Idaho 348, 757 P.2d 211 (Ct.App.1988). We hold that the trial court's failure to engage in a dialogue reminding Carrasco once again of his rights at the time of entry of the plea is not required, nor does failure to contemporaneously advise entitle Carrasco to withdraw his plea as a matter of law. However, we reverse on other grounds.

It is important to consider that Carrasco spoke no English and had no prior encounters with our legal system. Although he was provided with an interpreter, the language barrier, coupled with his lack of experience with our court system, may have made it difficult for Carrasco to grasp the importance of the information provided at his first arraignment. The fact that Carrasco failed to respond when asked at the initial arraignment if he understood the litany of rights recited to him by the district judge is an indication that this may well have been the situation. Considering the record as a whole, from both the initial arraignment and the change of plea hearing, there appears little basis for inferring that Carrasco made a voluntary, knowing and intelligent guilty plea.

Although there is no requirement that the trial court go through any particular litany before accepting a defendant's guilty plea, to ensure a valid plea, the trial court must inform a defendant that by pleading guilty he waives his rights to a jury trial, to confront witnesses, his right against self-incrimination, and that he waives any defenses he may have to the charges. This practice is necessary to develop an adequate record before the trial court to ensure the entry of a valid guilty plea. *State v. Steven,* 98 Idaho 131, 132, 559 P.2d 310, 311 (1977). A review of the entire record reveals this did not occur in the present action.

The record considered in its entirety and as a whole does not support a finding that Carrasco's guilty plea was entered voluntarily, knowingly and intelligently. We therefore hold that the trial court abused its discretion by denying Carrasco's motion to withdraw his guilty plea.

Accordingly, the judgments of conviction are set aside, and we reverse the trial court's denial of Carrasco's motion to withdraw his plea of guilty, and remand the case for trial and new proceedings.

BAKES, C.J., and BISTLINE, JOHNSON and McDEVITT, JJ. concur.

BISTLINE, Justice, specially concurring.

I am completely in agreement that Carrasco should have been allowed to withdraw the guilty pleas, which had been entered two months after he had learned what he might have understood, yet might not have sufficiently comprehended, at his initial arraignment. First of all, he was being advised of "rights" which not even all *caucasians* born and raised in the United States are aware of or understand. Secondly he is *not* such a caucasian, but is from Mexico. Mexico's system of jurisprudence bears little similarity to ours. The fact that an interpreter was involved does not necessarily mean that Carrasco was receiving the message of the translation which was being made for him. Much can be lost in translation, and crossing the language border does not necessarily mean the cultural border has been crossed. A person from Mexico, or from any part of Latin America, who understands little or no English, and who is caught up in a situation such as Carrasco appears to have been brought into with certain inducements, is ordinarily going to say "yes" when he is told something and asked if he understands. There are English speaking persons here in these United States of America who will answer "yes, I understand" rather than be thought not able to comprehend. With the people to the south of our border, it has been observed that it is part of their culture to give officialdom the sort of an answer which they believe the officialdom wants.

Other than for Justice Boyle's opinion rejecting as having no basis in law the argument that the two months elapse of time did not require that Carrasco again be

fully advised as to the consequences of entering a guilty plea, I would fully concur in his opinion. It seems inappropriate to me that in this case the Court, absent any citation of authority, can utter the bold pronunciado that the law has not, does not, and will not countenance the requirement of revisiting with a disadvantaged person, such as Gorgonio Carrasco, the many safeguards extended to those accused in this country when into the toils of the law they chance to come—especially when encouraged.