769 P.2d 596

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Gary Joe HAWKINS, Defendant–Appellant.**

**No. 17061.**

Court of Appeals of Idaho.

Feb. 24, 1989.

Robert E. Kinney, Orofino, for defendant-appellant.

Jim Jones, Atty. Gen. by Peter C. Erbland, Sp. Deputy Atty. Gen., Coeur d'Alene, for plaintiff-respondent.

BURNETT, Judge.

The principal issue in this appeal is whether the district court should have allowed a criminal defendant to withdraw his pleas of guilty to several related charges. Finding no legal error or abuse of discretion, we affirm the judgment entered upon the defendant's pleas. We also uphold the prison sentences contained in the judgment.

The facts essential to our opinion may be summarized briefly. At the age of seventeen, Gary Joe Hawkins was charged with three felonies: first degree burglary for entering a Lewiston home at night; grand theft for stealing money and property in the home; and first degree murder for killing an elderly occupant of the home during the commission of these crimes. Hawkins pled not guilty. Because the murder charge took Hawkins outside the purview of the Youth Rehabilitation Act, he was bound over to the district court for trial as an adult. He turned eighteen during the trial.

The first five days of trial were consumed by jury selection. The next seven days were devoted to presentation of the state's case. The evidence against Hawkins consisted of approximately sixty exhibits and testimony from about thirty witnesses, one of whom was an alleged accomplice. After the state rested, Hawkins conferred at length with his attorney, his father and other persons. He then aborted the trial by moving to change his pleas from not guilty to guilty on all of the alleged offenses. In return, the state—having previously stipulated not to seek the death penalty—agreed to recommend that sentences on the burglary and grand theft charges run concurrently with the anticipated prison sentence for first degree murder. The state further agreed not to file any new charges relating to Hawkins' conduct during pretrial confinement, including an alleged attempt to suborn perjury. After a lengthy colloquy, the district judge granted Hawkins' motion, discharged the jury, and ordered a presentence investigation.

Hawkins soon had second thoughts. He directed his attorney to file a motion to set aside the pleas. The attorney complied, and then withdrew from the case. After appointing a new attorney to represent Hawkins, the district court conducted a three-day evidentiary hearing on the motion. The judge subsequently prepared an exceptionally thorough memorandum decision, supplemented by detailed findings of fact and conclusions of law. He held that the guilty pleas were valid; that Hawkins had not presented a just reason to withdraw them; and, in any event, that the state would suffer substantial prejudice if such withdrawal were allowed. Accordingly, Hawkins' motion was denied. The court entered a judgment of conviction, imposing an indeterminate life sentence for the first degree murder; a concurrent, indeterminate fifteen-year sentence for the first degree burglary; and a concurrent, indeterminate fourteen-year sentence for the grand theft. This appeal followed.

I

Hawkins makes a two-pronged attack upon the judge's denial of his motion to withdraw the guilty pleas. First, he contends that the ruling was erroneous as a matter of law because the pleas were constitutionally defective. Second, he asserts that even if the pleas were constitutionally valid, there was a just reason for withdrawing them, and the judge abused his discretion by refusing to permit the withdrawal. We will examine each contention in turn.

A

Under the state and federal constitutions, a guilty plea must be made knowingly, intelligently and voluntarily. *E.g., State v. Colyer*, 98 Idaho 32, 557 P.2d 626 (1976). When the validity of a guilty plea is challenged on appeal, we conduct an independent review of the record. If the evidence is conflicting as to the circum-

stances surrounding the plea, we will accept the trial court's findings of fact supported by substantial evidence. However, we will freely review the court's application of constitutional requirements to the facts found. *See State v. Hiassen,* 110 Idaho 608, 716 P.2d 1380 (Ct.App.1986) (similar standard adopted for reviewing voluntariness of statements or admissions made by defendant).

■ Here, Hawkins testified that he was physically debilitated on the day he entered his pleas of guilty. He said he had slept poorly the previous night, had missed a meal, and had developed such ailments as chest pains and stomach sickness. He further testified that when he pled guilty to first degree murder, he thought he was actually pleading to second degree murder. Hawkins' new counsel asked the court to consider his client's youthful age, apparent immaturity and adverse reaction to pretrial confinement.

The judge also heard testimony of a psychiatrist who had been appointed to examine Hawkins. The psychiatrist stated that Hawkins had experienced significant stress during the trial but that he was capable of understanding his rights and of making a rational decision when he entered his guilty pleas. The judge heard testimony from custodial officers at the county jail, regarding Hawkins' conditions of confinement. Finally, he heard Hawkins' former attorney describe the negotiations and conferences that preceded the guilty pleas. Much of this testimony conflicted with Hawkins' version of the facts.

Based upon all this evidence, upon an assessment of Hawkins' credibility, and upon extensive observation of Hawkins during the trial, the district judge found that Hawkins was capable of making a rational decision when the guilty pleas were entered; that Hawkins fully understood each charge, including first degree murder, to which he pled guilty; and that Hawkins' pleas had not been induced by any promises except those contained in the negotiated plea agreement. Having reviewed the record, we believe the court's findings of fact are supported by substan-

tial evidence. Upon these facts, we agree that the guilty pleas were entered knowingly, intelligently and voluntarily. Accordingly, we hold that the pleas were constitutionally valid.

## B

■ The next question is whether Hawkins should have been allowed to withdraw his pleas, despite their validity, upon presenting a just reason for doing so. Motions to withdraw guilty pleas are governed by Rule 33, I.C.R. They fall into three general categories, depending upon the stage of the judicial process at which they are made:

The least favored category consists of motions filed after sentencing. Defendants making these motions must demonstrate that manifest injustice will result if their pleas are not withdrawn. At the other end of the spectrum, motions made before sentencing invoke the broad discretion of the court. The judge is encouraged to exercise discretion liberally in these cases. The defendant need only advance a just reason to withdraw his plea. When such a reason is presented, relief will be granted absent a strong showing of prejudice by the state.

Finally, a third category represents a hybrid of the other two. It consists of motions made before sentencing but after the defendants have read presentence reports or otherwise have received information about their probable sentences. In this type of case the court will exercise broad discretion, but may temper its liberality by weighing the defendant's apparent motive.

*State v. Hocker,* 115 Idaho 137, 139, 765 P.2d 162, 164 (Ct.App.1988) (citations omitted). *See also, State v. Ballard,* 114 Idaho 799, 761 P.2d 1151 (1988).

Here, Hawkins made his motion prior to judgment and, of course, prior to any presentence investigation. However, the motion and the pleas themselves were preceded by twelve days of trial. Hawkins had seen the state's evidence—not only as it related to the elements of the crimes charged, but also as it depicted the tragic

consequences of his alleged acts—which surely would be considered in any sentencing decision. Consequently, this case does not fit neatly into one of the three *Hocker* categories. Although it bears some resemblance to the intermediate category, where a trial court could "temper its liberality," we will not assume that the court here necessarily did so. For even if the case were deemed to fall within the most liberal category, the critical questions still would be whether there was a just reason for Hawkins to withdraw his pleas and, if so, whether such withdrawal would have substantially prejudiced the state.

Hawkins contends that regardless of whether his allegedly debilitated condition and confusion were sufficient to render the guilty pleas invalid, they nonetheless comprised a just reason for withdrawing the pleas under Rule 33. Hawkins further notes that although the judge found a factual basis for the pleas, he did not specifically ask whether Hawkins would admit to the acts constituting the crimes charged. Accordingly, Hawkins argues, this case is analogous to *State v. Jackson*, 96 Idaho 584, 532 P.2d 926 (1975). There, our Supreme Court held that a defendant's refusal to make such an admission did not nullify an otherwise valid plea, but that the defendant should have been allowed to withdraw his plea under the standard of liberality applicable to a motion made before judgment. Hawkins would have us hold, in light of *Jackson*, that a defendant's refusal to admit the predicate acts of an alleged crime is a just reason *per se* for withdrawing his plea before entry of judgment.

Although Hawkins' interpretation of *Jackson* may well be correct, it does not automatically entitle him relief in this case. *Jackson* is factually distinguishable in many respects, which need not be detailed here. The critical distinction, in our view, is that the Supreme Court in *Jackson* cited authority recognizing that a just reason for withdrawing a plea may be offset by prejudice to the state; yet the Court made no determination regarding prejudice in that case. Here, in contrast, the district judge found prejudice, deeming it to be an independent and sufficient reason for denying Hawkins' motion.

We hold the issue of prejudice to be dispositive. The judge found that the state had incurred an expense exceeding $65,000 in the aborted trial; that the state's trial strategy had been fully exposed; that a retrial would place a heavy additional burden upon the state and its witnesses (some of whom had traveled from North Carolina to testify); and that the passage of time from the first trial to a possible second trial was likely to affect the memories of witnesses, particularly one whom the court described as having "a somewhat limited mental ability...."

In response, Hawkins' counsel has argued that the state has no protected interest in its trial strategies; that a trial should never be denied for financial reasons; and that any concern about witness memories is purely speculative. These arguments have been well made by able counsel. Indeed, counsel should be commended for his diligent advocacy from the day he was appointed to represent Hawkins on the motion to withdraw the guilty pleas.

Nevertheless, we find the arguments unpersuasive. It is one thing to say that modern trial procedure, including pretrial discovery, no longer countenances trial by surprise; but it is quite another to say that the state should be indifferent to the prospect of presenting its case twice, giving the defendant an extra opportunity to develop lines of cross-examination and impeachment, while the state enjoys no such opportunity to preview the defense. It is also one thing to say that the defendant's right to a trial should not be measured in dollars; it is quite another to say that the expense of a *second* trial should not be considered, after the first has been aborted by the defendant's solemn entry of constitutionally valid guilty pleas. Finally, it is one thing to say that potential loss of witness memory is a matter of speculation; it is quite another to say that a trial judge, who has actually watched a particular witness testify, is engaged in nothing more than speculation when he expresses a concern

about that witness's future recall of material facts.

In sum, we believe the judge identified pertinent and permissible factors in determining whether substantial prejudice would result if Hawkins were allowed to withdraw his guilty pleas. *See, e.g., United States v. Kearney*, 684 F.2d 709 (10th Cir.1982); *United States v. Crowley*, 529 F.2d 1066 (3rd Cir.), *cert. denied*, 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1976). *See also State v. Hocker, supra* (noting that plea withdrawal impinges upon mutuality of obligation in negotiated plea agreements). We conclude that the district judge did not abuse his discretion in making a determination of substantial prejudice. Neither did he abuse his discretion in concluding that the state's showing of prejudice was strong enough to warrant denial of Hawkins' motion.

## II

█ Because we have upheld the pleas upon which the district court entered judgment, we now consider the sentences imposed. As noted above, Hawkins received an indeterminate life sentence for the first degree murder; a concurrent, indeterminate fifteen-year sentence for the first degree burglary; and a concurrent, indeterminate fourteen-year sentence for the grand theft. These crimes occurred prior to the Unified Sentencing Act, I.C. § 19–2513 (effective February 1, 1987). Consequently, the district judge was not required to specify, nor did he specify, any minimum periods of confinement under these sentences. For the purpose of sentence review, but not as prediction of actual parole, we deem the period of confinement under the indeterminate life sentence to be ten years. *State v. Wilde*, 104 Idaho 461, 660 P.2d 73 (Ct.App.1983). The length of confinement under each concurrent sentence is deemed to be one-third of its facial length—i.e., five years for the first degree burglary and four years, eight months, for the grand theft. *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982).

Hawkins has not challenged the indeterminate life sentence he received for first degree murder. Indeed, it was the most lenient sentence available. *See State v. Wilson*, 107 Idaho 506, 690 P.2d 1338 (1984). Rather, Hawkins challenges the other sentences, characterizing them as the "maximum" possible penalties for first degree burglary and grand theft. *See* I.C. § 18–1403 (first degree burglary) and I.C. § 18–2408(2) (relating to the type of grand theft apparently charged in this case). In our view, however, the district judge refrained from imposing truly "maximum" possible penalties. He made the sentences indeterminate rather than fixed; and, pursuant to the plea bargain, he made the sentences concurrent, rather than consecutive, with each other and with the indeterminate life sentence.

Thus, the sentences challenged here will not delay Hawkins' eligibility for eventual release from prison. Nevertheless, we have reviewed each sentence, taking into account the nature of the offense and the character of the offender. On the latter subject, we observe that Hawkins had a substantial record of juvenile offenses before committing the instant crimes. Under the sentence review criteria enunciated fully in *State v. Toohill, supra*, we hold that the district court did not abuse its discretion when it imposed the concurrent prison sentences for first degree burglary and grand theft.

Accordingly, the judgment of conviction, including each sentence, is affirmed.

WALTERS, C.J., and WINMILL, J. Pro Tem., concur.