861 P.2d 82

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Sidney DOPP, Defendant–Appellant.**

**No. 19203.**

Court of Appeals of Idaho.

Aug. 27, 1992.

Petition for Review Granted Oct. 28, 1992.

Stevan H. Thompson, Idaho Falls, for defendant-appellant.

Larry J. EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

SILAK, Judge.

Sidney Dopp pled guilty to charges of second degree kidnapping; felonious administering of drugs; infamous crime against nature; aggravated battery; possession of a controlled substance, cocaine; and battery with intent to commit a serious felony. The guilty pleas with respect to the aggravated battery and possession of cocaine charges were unconditional pleas, while Dopp's pleas on the other charges were *Alford*[1] pleas. After he entered his guilty pleas, but before sentencing, Dopp moved to withdraw the pleas. The district court, after a hearing, denied Dopp's motion to withdraw the pleas. Dopp appeals asserting that the district court abused its discretion in denying his motion. For the reasons set forth below, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

This appeal involves four criminal cases. The first three cases arose from incidents that occurred late in the evening of April 21, 1989. On that date the defendant, wearing only a shirt, assaulted a 22-year old female as she was walking down the sidewalk on the street where she lived. As the woman strove to fight Dopp off, he struck her, knocked her down, tore at her clothing, and attempted to drag her into a nearby residence. As the victim's husband approached the scene, Dopp fled to another nearby home where an older couple lived. When the wife answered Dopp's knock on the door, Dopp forced his way into the home. As the husband came to his wife's aid, Dopp began to fight with the husband. During the struggle, Dopp struck the husband in the head with the butt of a shotgun. The couple was able to escape to the home of a neighbor where they called the police. The police found and arrested Dopp shortly after they arrived on the scene. Later, the police found Dopp's car parked in a nearby alley. In the car they found Dopp's pants, underwear, shoes, and certain quantities of cocaine and marijuana as well as other drug paraphernalia.

These incidents precipitated the commencement of three criminal cases. In the case stemming from Dopp's assault on the younger female (Case No. 89-4-642), Dopp was bound over to the district court on a charge of battery with the intent to commit rape. In the case stemming from Dopp's attack on the older couple (Case No. 89-4-635), Dopp was bound over for trial on a charge of aggravated battery. In the case stemming from the drugs found in Dopp's car (Case No. 89-5-807), Dopp was bound over for trial on a charge of possession of cocaine.

The fourth criminal case (Case No. 89-1410) arose from events which occurred on August 8, 1989, about three weeks after Dopp's release on bail. On that date Dopp assaulted a 16-year old girl by tying her up, injecting her with a chemical substance alleged to have been cocaine, and then sexually assaulting her. As a result of this incident, Dopp was bound over for trial on six counts: first-degree kidnapping, felonious administering of drugs, battery with intent to commit the infamous crime against nature and rape, attempted rape, and two counts of the infamous crime against nature.

On May 9, 1990, Dopp entered into a written plea agreement with the state. Pursuant to this agreement, on May 10, Dopp entered pleas of guilty to the following charges: Case No. 89-4-642, battery with intent to commit a serious felony; Case No. 89-4-635, aggravated battery;

**1.** *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

Case No. 89–5–807, possession of a controlled substance, cocaine; Case No. 89–1410, second-degree kidnapping, felonious administering of drugs, and one count of infamous crime against nature. Although Dopp entered guilty pleas to the charges in cases 89–4–642 and 89–1410, he continued to assert his legal innocence with respect to those crimes. Dopp's pleas to the aggravated battery and possession of drugs charges were unconditional admissions of guilt.

In exchange for Dopp's guilty pleas, the state agreed to reduce the charge of first degree kidnapping, which carried a mandatory sentence of life in prison, to second degree kidnapping. The state also agreed to dismiss the charges of battery with intent to commit the infamous crime against nature and rape, attempted rape, and one of the counts of infamous crime against nature. The state further agreed to recommend concurrent sentences, and a unified prison sentence of no more than 25 years indeterminate with 10 years fixed. The plea agreement provided that if the court exceeded this sentence, Dopp could withdraw his pleas of guilty.

On May 31, 1990, 21 days after entering his guilty pleas, Dopp filed a motion under I.C.R. 33 to withdraw all of his guilty pleas. A hearing was held on the motion on June 25. At the hearing, Dopp asserted that he should be allowed to withdraw his guilty pleas because at the time he entered the plea bargain his mental state was not "right" and because he never admitted that he committed the crimes charged. On October 2, 1990, the district court denied Dopp's motion.

On January 9, 1991, the district court imposed the following sentences on Dopp: Case No. 89–4–642, battery with intent to commit a serious felony—ten years fixed; Case No. 89–4–635, aggravated battery—ten years fixed; Case No. 89–5–807, possession of a controlled substance, cocaine—three years fixed; Case No. 89–1410, second-degree kidnapping—twenty-five years indeterminate with ten years fixed, felonious administering of drugs—five years fixed, and infamous crime against nature—

twenty-five years indeterminate with ten years fixed. Dopp was given credit for 602 days served on each of the sentences, and all the sentences were to run concurrently. He appealed to challenge the district court's denial of his motion to withdraw his guilty pleas.

## ANALYSIS

Dopp's appeal requires us to address two issues: (1) whether Dopp entered his guilty pleas knowingly, voluntarily and intelligently, and (2) whether the district court abused its discretion in denying Dopp's plea withdrawal motion. "Once an appellate court has made the threshold determination that the guilty plea was knowingly, intelligently and voluntarily made, in the constitutional sense, then it proceeds to determine whether any other 'just reason' exists for withdrawal of the plea." *State v. Rodriguez*, 118 Idaho 957, 959, 801 P.2d 1308, 1310 (Ct.App.1990). We will consider these two issues in turn.

The determination that a plea is entered voluntarily and knowingly involves a three-part inquiry: (1) whether the defendant's plea was voluntary in the sense that he understood the nature of the charges and was not coerced; (2) whether the defendant knowingly and intelligently waived his rights to a jury trial, to confront his accusers, and to refrain from incriminating himself; and (3) whether the defendant understood the consequences of pleading guilty. *State v. Colyer*, 98 Idaho 32, 34, 557 P.2d 626, 628 (1976). On appeal, voluntariness of the guilty plea and waiver must be reasonably inferred from the record as a whole. *State v. Carrasco*, 117 Idaho 295, 300, 787 P.2d 281, 286 (1990) (citing *State v. Peterson*, 98 Idaho 706, 571 P.2d 767 (1977)).

Dopp has asserted that because he was under severe emotional stress prior to entering his guilty pleas, he did not enter those pleas voluntarily. At the hearing on his plea withdrawal motion, Dopp attempted to support this argument by introducing evidence to show that he had refused to eat food for about six days between March 17

and 22, 1990, and also that he tried to commit suicide on March 23, 1990. Dopp's argument, however, is contradicted by his own testimony, as well as the testimony of David Doten, the therapist and mental health consultant who worked with Dopp during April and May of 1990.

At the plea withdrawal hearing, Doten testified Dopp was neither severely depressed nor at all mentally ill during late April and May of 1990. He stated that by this time Dopp was lucid, very oriented, and very competent. When asked by the state's attorney, on cross-examination, "was there ever a time in April or May of 1990 where you found Mr. Dopp to be delusional, having hallucinations, not aware of where he is at, not fully capable of understanding what was going on around him?" Doten responded, "Oh, no."

Dopp's testimony at the hearing also failed to show that he was mentally incompetent to enter a voluntary guilty plea on May 10, 1990. When asked by his counsel at the hearing, "Do you have anything you want to offer to the Court to indicate exactly why you think your mental state may not have been serving you correctly when you entered your pleas?" Dopp responded in part:

I think at the time I was going—at the time we discussed taking a plea bargain you [Dopp's counsel] come down and you seen me every day for like a week and I was hoping and basing on the fact that when we come up here, you know, we'd be able to work something out, I don't know, as far as a sentence reduction or whatever. But the more—when I come up here and took a plea and the Judge was reading off everything I was waiving, all those rights, and the jury trials and pleading guilty to something I am not guilty of, I don't—I'd rather take it to trial and have a trial decide whether I am guilty or not.

When asked by his counsel whether there was some difference in the way he was feeling or looking at life between the time he entered the guilty pleas and the time he filed the motion to withdraw the pleas, Dopp responded:

Well, I think a lot of the reason I took the plea is hoping for a sentence reduction, you know, that is the main reason I come up here and—plus I was, you know, wanting to get this over with, I have been down there for almost a year now. The more I got to thinking about it the more I just thought I would much rather take it to trial and have the jury decide.

When asked by his counsel, "You mentioned your mental state, do you feel like you were not looking at things in some full way before the plea, that has changed in some fashion since then?" Dopp responded:

Uh-huh, yeah. He [Doten] come and talked to me and I talked to him about the plea bargain that I had taken. Like I say your mood swings go up and down all the time down there, one day you can be in a good mood and the next day you can't and I just feel that I'd have a much better chance of going to trial on this thing and the fact of pleading guilty to something, you know, that I am not guilty to, . . . .

During the hearing, Dopp never presented any evidence to show that on May 10, 1990, he was mentally incompetent to enter a voluntary plea of guilty. Dopp, himself, never mentioned the self-induced fast nor the suicide attempt, nor did he testify he was severely depressed or in any other way mentally impaired at the time he entered his pleas. His testimony, rather, reveals that his primary motivation for wanting to withdraw his pleas was because he initially believed he would get a lighter sentence by entering the plea bargain, and he subsequently changed his mind and believed his chances of getting a lighter sentence would be better if he went to trial and put the case to a jury.

On cross-examination at the plea withdrawal hearing, Dopp testified he fully understood the charges against him when he entered the guilty pleas; he understood the possible sentence he could receive; he reviewed the plea bargain agreement before he signed it; and he had discussed the agreement daily with his attorney for at

least a week prior to entering the agreement. The record also shows that at the hearing where Dopp entered his guilty pleas, the district judge carefully explained to Dopp the rights he would be waiving if he chose to plead guilty. The judge explained in detail Dopp's right to a jury trial, the process by which a jury would be selected, and the important role Dopp's counsel would play in the jury selection process. The judge then explained to Dopp that he would be presumed innocent at trial, and the state would bear a difficult burden of proving his guilt on each charge beyond a reasonable doubt. The judge went on to explain to Dopp all of the essential elements of the crimes charged which the state would have to prove in order to convict him. The judge further explained to Dopp that at trial he would have the right to confront and cross-examine any witnesses called to testify against him, the right to call witnesses in his defense, and the right to testify in his own defense, but that he could not be forced to do so if he chose not to. The judge also explained to Dopp the potential penalties he would face should he choose to plead guilty to the various charges. Before accepting Dopp's guilty pleas, the district judge had the following colloquy with Dopp:

The Court: Today do you feel as you stand before me right now that you are under any undue pressure, threats, force, compulsion of any kind, to cause you to consider making a plea today?

Dopp: No, Sir.

The Court: Is the plea today that you are going to make voluntary?

Dopp: Yes, sir, it is.

The Court: Sometimes a person without consideration whether they are guilty or innocent wants to plead just to get the case over with. Are you doing this just to get this matter over with?

Dopp: No, sir.

Based on our review of transcripts from the plea hearing and the plea withdrawal hearing, we conclude the record in this case does not indicate that Dopp's guilty pleas were involuntarily made, whether for mental incompetency or any other reason. Rather, the record shows that Dopp's guilty pleas were valid, having been entered into knowingly and voluntarily.

Having concluded that Dopp's guilty pleas were validly entered, we turn to the question whether the district court abused its discretion in refusing to allow Dopp to withdraw the pleas. The standard of review on appeal in cases where a defendant has attempted to withdraw a guilty plea is whether the district court abused its discretion in denying the motion. *Carrasco*, 117 Idaho 295, 298, 787 P.2d 281, 284. The defendant bears the burden of proving that the district court abused its discretion and that withdrawal of the plea should have been allowed. *Id.*

The trial court's discretion to grant or deny a plea withdrawal motion is affected by the timing of the motion. A motion made after sentencing may be granted only "to correct manifest injustice", I.C.R. 33(c), while a less rigorous standard applies when the motion is made prior to sentencing. *State v. Ballard*, 114 Idaho 799, 801, 761 P.2d 1151, 1153 (1988). A presentence motion for withdrawal, however, is not an automatic right. *Carrasco*, 117 Idaho at 298, 787 P.2d at 284. Defendants seeking to withdraw a guilty plea before sentencing must first show a just reason for withdrawing the plea. *Ballard*, 114 Idaho at 801, 761 P.2d at 1153. "Once the defendant has met this burden, the state may avoid the granting of the motion by demonstrating that prejudice would result from withdrawal of the plea." *Id.* The defendant's failure to present and support a plausible reason will dictate against granting withdrawal, even absent prejudice to the prosecution. *Rodriguez*, 118 Idaho at 959, 801 P.2d at 1310 (citing *Ballard*, 114 Idaho at 801, 761 P.2d at 1153).

The reasons put forth by Dopp in support of his plea withdrawal motion are: (1) he never admitted committing the acts constituting the elements of the crimes charged, and (2) the state would not be prejudiced by the withdrawal. For the reasons stated below, we conclude that while these reasons are factors which are proper-

ly considered in determining whether to grant or deny a plea withdrawal motion, these reasons by themselves do not require a trial court to exercise its discretion in favor of granting the motion.

Dopp argues that under *State v. Jackson*, 96 Idaho 584, 532 P.2d 926 (1975), it is an abuse of discretion for a trial court to deny a plea withdrawal motion prior to sentencing if the defendant's pleas were *Alford*-type pleas. A similar argument was made and rejected in *Rodriguez, supra*. In affirming the district court's denial of Rodriguez's presentence motion to withdraw his *Alford*-type pleas, we held that *"Jackson* did not announce a *per se* rule requiring an automatic finding of 'just cause' whenever a defendant seeks to withdraw an *Alford*–type plea before sentencing." *Rodriguez*, 118 Idaho at 960, 801 P.2d at 1311. In support of this conclusion, we quoted the following language from *United States v. Barker*, 514 F.2d 208 (D.C.Cir.1975), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975):

> Were mere assertion of legal innocence always a sufficient condition for withdrawal, withdrawal would effectively be an automatic right. There are few if any criminal cases where the defendant cannot devise some theory or story which, if believed by a jury, would result in his acquittal. A guilty plea is very typically entered for the simple "tactical" reason that the jury is unlikely to credit the defendant's theory or story. Indeed, so long as a factual basis for the plea exists, a court may accept such a "tactical" guilty plea even from a defendant who continues to assert his innocence. Surely, such a defendant does not retain a right automatically to withdraw his plea. A guilty plea "frequently involves the making of difficult judgments." Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but "a grave and solemn act" which is "accepted only with

care and discernment." It follows that a court, in addressing a withdrawal motion, must consider not only whether the defendant has asserted his innocence, but also the reason why the defenses now presented were not put forward at the time of original pleading.

*Barker*, 514 F.2d at 221 (citations omitted).

■ On appeal, Dopp has not argued any new or old defenses to the charges he faced, much less explained why those defenses were not put forward at the time of his original pleading. The record shows, rather, that Dopp simply changed his mind after pleading guilty because he now believes he has a better chance of getting a lighter sentence if the case goes to trial. While, under *Jackson*, the district court could have found that the fact that four of Dopp's six guilty pleas were *Alford* pleas constituted a just reason for withdrawal of those four pleas, we conclude that, under *Rodriguez*, the district court was not required to reach such a conclusion. Because we uphold the district court's conclusion that Dopp failed to show a just reason why he should be allowed to withdraw his guilty pleas, the state is not required to prove that it would be prejudiced by the withdrawal. A defendant's failure to present and support a plausible reason dictates against granting withdrawal, even absent prejudice to the prosecution. *Rodriguez*, 118 Idaho at 959, 801 P.2d at 1310 (citing *Ballard*, 114 Idaho at 801, 761 P.2d at 1153).

### CONCLUSION

We hold that the district court did not abuse its discretion in concluding that Dopp failed to meet his burden of showing a just reason why he should be allowed to withdraw his guilty pleas. Accordingly, we affirm the order denying Dopp's motion to withdraw his guilty pleas.

WALTERS, C.J., and SWANSTROM, J., concur.