861 P.2d 51

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Sidney DOPP, Defendant–Appellant.**

**No. 20286.**

Supreme Court of Idaho,
Twin Falls, March 1993 Term.

Aug. 5, 1993.

Rehearing Denied Oct. 19, 1993.

Stevan H. Thompson, Idaho Falls, for defendant-appellant.

Larry EchoHawk, Atty. Gen., and Michael A. Henderson, Deputy Atty. Gen., argued, Boise, for plaintiff-respondent.

McDEVITT, Chief Justice.

## BACKGROUND

This appeal involves four criminal cases. The first three cases arose from incidents that occurred late in the evening of April 21, 1989. On that date the defendant, wearing only a shirt, assaulted a 22-year old female as she was walking down the sidewalk on the street where she lived. As the woman strove to fight Dopp off, he struck her, knocked her down, tore at her clothing and attempted to drag her into a nearby residence. As the victim's husband approached the scene, Dopp fled to another nearby home where an older couple lived. When the wife answered Dopp's knock on the door, Dopp forced his way into the home. As the husband came to his wife's aid, Dopp began to fight with the husband. During the struggle, Dopp struck the husband in the head with the butt of a shotgun. The couple was able to escape to the home of a neighbor where they called the police. The police found and arrested Dopp shortly after they arrived on the scene. Later, the police found Dopp's car parked in a nearby alley. In the car they found Dopp's pants, underwear, shoes, and certain quantities of cocaine and marijuana as well as other drug paraphernalia.

These incidents precipitated the commencement of three criminal cases. In the case stemming from Dopp's assault on the younger female (Case No. 89-4-642), Dopp was bound over to the district court on a charge of battery with the intent to commit rape. In the case stemming from Dopp's attack on the older couple (Case No. 89-4-635), Dopp was bound over for trial on a charge of aggravated battery. In the case stemming from the drugs found in Dopp's car (Case No. 89-5-807), Dopp was bound over for trial on a charge of possession of cocaine.

The fourth criminal case (Case No. 89-1410) arose from events which occurred on August 8, 1989, about three weeks after Dopp's release on bail. On that date Dopp assaulted a 16-year old girl by tying her up, injecting her with a chemical substance alleged to have been cocaine, and then sexually assaulting her. As a result of this incident, Dopp was bound over for trial on six counts: first-degree kidnapping, felonious administering of drugs, battery with intent to commit the infamous crime against nature and rape, attempted rape, and two counts of the infamous crime against nature.

On May 9, 1990, Dopp entered into a written plea agreement with the state. Pursuant to this agreement, on May 10, Dopp entered pleas of guilty to the following charges: Case No. 89-4-642, battery with intent to commit a serious felony; Case No. 89-4-635, aggravated battery; Case No. 89-5-807, possession of a controlled substance, cocaine; Case No. 89-1410, second-degree kidnapping, felonious administering of drugs, and one count of infamous crime against nature. Although Dopp entered guilty pleas to the charges in cases 89-4-642 and 89-1410, he continued to assert his legal innocence with respect to those crimes. Dopp's pleas to the aggravated battery and possession of drugs charges were unconditional admissions of guilt. In exchange, the State reduced the charges accordingly, and agreed to recom-

mend concurrent sentences, and a unified prison sentence of no more than 25 years indeterminate with 10 years fixed.

Several weeks prior to the entry of these pleas, appellant refused to consume any food for the period of March 16–22, 1990. On March 23, 1990, appellant attempted to hang himself from the bars of his jail cell. A mental health consultant called to the jail shortly thereafter evaluated appellant as very stressed, angry, and frustrated. Appellant was then moved into segregation status and placed under an acute-suicide watch. On April 11, 1990, appellant was upgraded to a 30–minute watch—the same watch given all inmates.

On May 31, 1990, Dopp filed a motion under I.C.R. 33(c) to withdraw all of his guilty pleas. A hearing was held on the motion on June 25. At the hearing, Dopp asserted that he should be allowed to withdraw his guilty pleas because at the time he entered the plea bargain his mental state was not "right" and because he never admitted that he committed the crimes charged. On October 2, 1990, the district court denied Dopp's motion. On January 9, 1991, the district court sentenced Dopp in accordance with the State's recommendations.

Dopp appealed the district court's denial of his motion to withdraw. The appeal was heard by the Court of Appeals. The Court of Appeals affirmed, 124 Idaho 512, 861 P.2d 82, holding that the plea was knowing, voluntary, and intelligent and that, because Dopp failed to show a just reason why he should be allowed to withdraw his guilty pleas, the district court did not abuse its discretion in denying the motion. Dopp's subsequent Petition for Review to this Court was granted. The issues this Court must resolve include:

1. whether appellant entered his guilty pleas knowingly, voluntarily and intelligently; and

2. whether the trial court abused its discretion in denying appellant's motion to withdraw a guilty pleas.

## STANDARD OF REVIEW

In *Sato v. Schossberger*, 117 Idaho 771, 775, 792 P.2d 336, 340 (1990), this Court stated:

If, as in this case, the issues presented to the Court of Appeals concerned a decision of a district court, we consider the correctness of the *district court's* decision. While we value the opinion of the Court of Appeals for the insight it gives us in addressing the issues presented on appeal, we do not focus on the opinion of the Court of Appeals, but rather on the decision of the district court.

■ The standard of review on appeal in cases where a defendant has attempted to withdraw a guilty plea is whether the district court has properly exercised judicial discretion as distinguished from arbitrary action. *State v. Carrasco*, 117 Idaho 295, 298, 787 P.2d 281, 284 (1990); *State v. Jackson*, 96 Idaho 584, 587, 532 P.2d 926, 929 (1975).

## ANALYSIS

### I.

### KNOWING, VOLUNTARY, & INTELLIGENT GUILTY PLEA

■ Dopp has asserted that because he was under severe emotional stress prior to entering his guilty pleas, he did not enter those pleas voluntarily. At the hearing on his plea withdrawal motion, Dopp attempted to support this argument by introducing evidence to show that he had refused to eat food for about six days between March 16 and 22, 1990, and also that he tried to commit suicide on March 23, 1990. Dopp believes that, in light of his continual assertion of legal innocence, the extreme emotional stress suffered prior to entry of his guilty pleas, and the release of said stress after May 10, the pleas were not made as a result of a voluntary act.

■ Before a trial court may accept a plea of guilty, I.C.R. 11(c) requires that the record of the entire proceedings, including

reasonable inferences drawn therefrom show:

(1) The voluntariness of the plea.

(2) The defendant was informed of the consequences of the plea, including minimum and maximum punishments, and other direct consequences which may apply.

(3) The defendant was advised that by pleading guilty he would waive his right against compulsory self-incrimination, his right to trial by jury, and his right to confront witnesses against him.

(4) The defendant was informed of the nature of the charge against him.

(5) Whether any promises have been made to the defendant, or whether the plea is a result of any plea bargaining agreement, and if so, the nature of the agreement and that the defendant was informed that the court is not bound by any promises or recommendation from either party as to punishment.

I.C.R. 11(c). Accordingly, the determination that a plea is entered voluntarily, knowingly and intelligently involves a three-part inquiry: (1) whether the defendant's plea was voluntary in the sense that he understood the nature of the charges and was not coerced; (2) whether the defendant knowingly and intelligently waived his rights to a jury trial, to confront his accusers, and to refrain from incriminating himself; and (3) whether the defendant understood the consequences of pleading guilty. *State v. Carrasco,* 117 Idaho 295, 297, 787 P.2d 281, 283 (1990); *State v. Hawkins,* 117 Idaho 285, 288, 787 P.2d 271, 274 (1990); *State v. Colyer,* 98 Idaho 32, 34, 557 P.2d 626, 628 (1976). The trial court need not establish a factual basis for the crimes charged prior to accepting a guilty plea. *State v. Coffin,* 104 Idaho 543, 545, 661 P.2d 328, 330 (1983). On appeal, Idaho law requires that voluntariness of the guilty plea and waiver must be reasonably inferred from the record as a whole. *State v. Carrasco,* 117 Idaho 295, 300, 787 P.2d 281, 286 (1990) citing *State v. Peterson,* 98 Idaho 706, 571 P.2d 767 (1977);

*Hawkins,* 117 Idaho at 288, 787 P.2d at 274.

At the hearing at which the defendant entered his guilty pleas, the district judge read each count to which the defendant would be pleading guilty and reviewed with him the elements of each offense. The defendant acknowledged that he understood the charges, that the pleas were voluntary, and that he was not being compelled to enter them. Dopp's sole basis for his contention that his pleas were not voluntary, his mental instability, is contradicted by the testimony of David Doten, the mental therapist, who testified that Dopp was neither severely depressed nor at all mentally ill during April or May of 1990. Doten stated that Dopp was very lucid, oriented, and competent.

When asked on cross-examination at the plea withdrawal hearing what was different about his mental state or perspective at the time of his motion to withdraw as compared to the time of his plea inscription, Dopp consistently answered that, after thinking about it, he would rather take it to trial. Indeed, Dopp's testimony reveals that his primary motivation for wanting to withdraw his pleas was because he initially believed he would get a lighter sentence by entering the plea bargain, and he subsequently changed his mind and believed his chances of getting a lighter sentence would be better if he went to trial and submitted the case to a jury. Dopp never presented any evidence to show that on May 10, 1990, he was mentally incompetent to enter a voluntary plea of guilty. In fact, he explicitly acknowledged on cross-examination that he had understood the charges. Appellant does not contend that he was coerced, or that he did not understand his rights, or that he did not understand the consequences of pleading guilty. Dopp testified that he fully understood the charges against him when he entered the guilty pleas, that he understood the possible sentence he could receive, that he reviewed the plea bargain agreement before he signed it, and that he had discussed the agreement daily with his attorney for at least a week prior to entering the agreement. The rec-

ord also shows that at the hearing where Dopp entered his guilty pleas the district judge carefully complied with the requirements of I.C.R. 11(c), explaining in detail to Dopp the rights he would be waiving if he chose to plead guilty, including his right to a jury trial, to have all the elements of each crime proved beyond a reasonable doubt, his right to confront and cross-examine witnesses and to call witnesses in his defense, and the right to testify in his own defense, but that he could not be forced to do so if he chose not to. The judge also explained to Dopp the potential penalties he would face should he choose to plead guilty to the various charges. We hold that the record supports the trial court's conclusion that the pleas were entered knowingly, intelligently and voluntarily.

## II.

### ABUSE OF DISCRETION

■ Dopp argues that the trial court abused its discretion by not allowing him to withdraw his pleas because (1) he never admitted committing the acts constituting the elements of the crime charged, and (2) the state would not be prejudiced by the withdrawal.

■ Withdrawal of a presentence guilty plea is not an automatic right, *State v. Lavy*, 121 Idaho 842, 828 P.2d 871 (1992); *United States v. Barker*, 514 F.2d 208, 221 (D.C.Cir.1975); *Goo v. United States*, 187 F.2d 62 (9th Cir.1951), and the defendant has the burden of proving that the plea should be allowed to be withdrawn. *State v. Martinez*, 89 Idaho 129, 403 P.2d 597 (1965); *Everett v. United States*, 336 F.2d 979, 984 (D.C.Cir.1964). The withdrawal of guilty pleas is governed by I.C.R. 33(c). Idaho Criminal Rule 33(c) states that:

A motion to withdraw a plea of guilty may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside

the judgment of conviction and permit the defendant to withdraw his plea.

The rule distinguishes between pleas made prior to and after sentencing, exacting a less rigorous measure of proof for presentence motions. The first case to interpret and apply I.C.R. 33(c) (then I.C.R. 32(d)) was *State v. Jackson*, 96 Idaho 584, 532 P.2d 926 (1975).[1] The *Jackson* court, feeling constrained by the presumption that, under the less rigorous standard, presentence motions should be granted liberally, and relying on federal case law interpreting Fed.Crim.Rule 32(d) (virtually identical to I.C.R. 32(d)) advocating just such an interpretation, held that it was an abuse of discretion for the trial court to deny a presentence guilty plea withdrawal motion where the defendant denied commission of the acts constituting the elements of the crime. *Jackson*, 96 Idaho at 588, 532 P.2d at 930.

■ Later cases applying I.C.R. 33(c) to presentence motions to withdraw a guilty plea set out a two-part test. First, defendants seeking to withdraw a guilty plea before sentencing must show a just reason for withdrawing the plea, and second, "[o]nce the defendant has met this burden, the state may avoid the granting of the motion by demonstrating that prejudice would result from withdrawal of the plea." *State v. Hawkins*, 117 Idaho 285, 289, 787 P.2d 271, 275 (1990); *State v. Ballard*, 114 Idaho 799, 801, 761 P.2d 1151, 1153 (1988). *See also United States v. Carden*, 599 F.2d 1320 (4th Cir.1979). The defendant's failure to present and support a plausible reason will dictate against granting withdrawal, even absent prejudice to the prosecution. *Hawkins*, 117 Idaho at 289, 787 P.2d at 275; *Ballard*, 114 Idaho at 801, 761 P.2d at 1153. *See also United States v. DeFreitas*, 865 F.2d 80, 81–82 (4th Cir.1989); *United States v. Rasmussen*, 642 F.2d 165, 168 (5th Cir.1981); *United States v. Webster*, 468 F.2d 769 (9th Cir. 1972).

1. In *Jackson*, the defendant pled guilty to the crime charged but, like Dopp, refused to admit the commission of the acts constituting the crime. *Jackson*, 96 Idaho at 585, 532 P.2d at

927. This type of plea is commonly denominated an *Alford*-type plea based on *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

Turning first to appellant's unconditional guilty pleas in case nos. 89–4–635 and 89–5–807, we hold that, under the two-part test identified above, the trial court did not abuse its discretion in denying appellant's motion to withdraw the pleas. Appellant's contention that the pleas were involuntary is without merit and thus provides no "just reason" for withdrawal. Moreover, there is evidence indicating that the State, in Case No. 89–4–635, would be prejudiced by withdrawal. The state's principal witness in that case has died. Thus, without such a withdrawal, the state has a conviction; with a withdrawal, it probably has nothing. The trial in which this deceased witness was to testify was set for May 9, 1990, the very day the appellant signed the plea agreement, which was approximately one week before the witness' death. Thus, had the appellant not entered his guilty plea, the witness would have been available to testify against him.

We next turn to appellant's motion concerning the conditional guilty pleas. The *Jackson* case, which preceded the evolution of the two-step inquiry employed in *Ballard* and *Hawkins*, dictates the conclusion that a trial court must grant a motion to withdraw a guilty plea where such plea does not admit the facts of the charge. Accordingly, the trial court's denial of appellant's motion to withdraw his conditional guilty pleas in case nos. 89–4–642 and 89–1410 is reversed and the case remanded for further proceedings consistent with this holding.

 However, the harsh mandate harbored in *Jackson* has been somewhat tempered by subsequent cases coursing a less strident vein under the auspices of I.C.R. 33(c) and Fed.Rules of Crim.Proc. 32(d). Federal cases hold generally that a defendant who enters an *Alford*-type plea is not "willy nilly" entitled to withdraw it, as this would render inconsequent the guilty plea. *See United States v. Barker,* 514 F.2d 208, 221 (D.C.Cir.1975); *United States v. Buckley,* 847 F.2d 991 (1st Cir.1988), *cert. denied,* 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989); *United States v. Keiswetter,* 860 F.2d 992 (10th Cir.1988). Appli-

cation of the two-part test influenced by the guidance offered by these recent federal cases, leads us to the conclusion that where a guilty plea is properly entered, withdrawal is not an automatic right and more substantial reasons than just asserting legal innocence must be given. The utility of *Alford* pleas will be severely reduced if defendants are permitted to withdraw them before sentencing for no additional reason. Such a holding might well lead to a reluctance on the part of prosecutors and judges to agree to the acceptance of such pleas. This would impair judicial efficiency by eliminating a useful procedure for the resolution of criminal cases; it would also work to the detriment of defendants. We therefore hold that a denial of factual guilt is not a just reason for the later withdrawal of the plea, in cases where there is some basis in the record of factual guilt, and this Court's holding in *Jackson* is overruled with respect to all guilty pleas entered after this date to the extent that it conflicts with this holding.

No costs on appeal.

JOHNSON and TROUT, JJ., and WOODLAND, J. Pro Tem., concur.

BISTLINE, Justice, concurring in the result.

While, in this one justice's view, the Court should not be "hesitant to reverse ourselves when a doctrine, a defense, or a holding in a case, has been proven over time to be unjust or unwise," *Salinas v. Vierstras,* 107 Idaho 984, 990, 695 P.2d 369, 375 (1985), the rule of *State v. Jackson,* 96 Idaho 584, 532 P.2d 926 (1975), is neither unjust nor unwise. Thus, while there are occasions for overruling precedent, *see State v. Guzman,* 122 Idaho 981, 987–998, 842 P.2d 660, 666–78 (1992) (wherein the logical and factual flaws in the good-faith exception to the exclusionary rule as well as the precedential and policy reasons for rejecting that rule were demonstrated, at length), this is not one of them. Accordingly, I disagree with the majority's decision to overrule *State v. Jackson,* although I concur in the result of

the opinion because of the prospective only application of today's holding.

Justice Johnson who dissented in part in *Guzman* performed an admirable service in synthesizing this Court's decisions regarding the doctrine of *stare decisis* when he said that

[f]rom these "precedents" we can glean that prior decisions of this Court should govern unless they are manifestly wrong or have proven over time to be unjust or unwise. While I am prepared to accept these limitations on the rule of stare decisis, I am not prepared to allow these limitations to convert the precedents of this Court into ephemeral edicts that are here today and gone tomorrow, the duration of their lifespan depending on the composition and disposition of the Court. This is not to say that I am unwilling to overrule precedent that is manifestly wrong.

122 Idaho at 1001, 842 P.2d at 680. Similar sentiments were earlier expressed in a specially concurring opinion by the author of today's *State v. Dopp* majority opinion. In a scholarly, well written, informative, and "in-depth review of the legal principal of *stare decisis*," Justice McDevitt concluded that "[w]hile it may seem that *stare decisis* is a rule of convenience, it is not. I believe this rule requires us to stand by our prior decisions unless there are compelling and cogent reasons that necessitate a departure from our prior rulings." *State v. Card,* 121 Idaho 425, 440–52, 825 P.2d 1081, 1096–1108 (1991), (McDevitt, J., specially concurring).[2] It is not unreasonable to believe that Justice Trout and Justice Pro Tem. Woodland have an equally high regard for the doctrine of *stare decisis* as do Justices McDevitt and Johnson, but their views on the subject matter have not yet been advanced, and may later surface in the Idaho and Pacific Reporters.

Given the recent and fervent adulation at the altar of *stare decisis*, it might be expected that the majority opinion would make an offering which would forcefully demonstrate how *State v. Jackson* was "manifestly wrong" and would additionally establish the "compelling and cogent reasons" which are needed in order to depart from our prior rulings. Instead, the majority's explanation of why *Jackson* must be overruled is as "ephemeral" as that case itself now appears to be.

I.

Initially, it should be noted that this is not an example of a single aberrant case existing outside the mainstream of the law. In that case, the overruling of the rogue case would be more of a housekeeping matter and thus not subject to the "unjust or unwise" test. Here, to the contrary, a review of the Idaho cases cited by the majority shows those cases are consistent with and do not undermine the *Jackson* rule. In *State v. Lavy,* 121 Idaho 842, 828 P.2d 871 (1992), the defendant did not enter an *Alford* plea, and the motion to withdraw was made after he was sentenced. Thus, I.C.R. 33(c) required a showing of "manifest injustice." In *Jackson,* a showing of manifest injustice was not required because the motion to withdraw the guilty plea was made prior to sentencing. *State v. Martinez,* 89 Idaho 129, 403 P.2d 597 (1965), involves the same factual situation as *Lavy.*

Although *State v. Hawkin,* 117 Idaho 285, 787 P.2d 271 (1990) and *State v. Ballard,* 114 Idaho 799, 761 P.2d 1151 (1988), are pre-sentencing withdrawal cases, both are easily distinguishable from *Jackson.* First, neither *Hawkins* nor *Ballard* is an *Alford* plea case. Second, in both cases, the state would have been severely prejudiced if the motion to withdraw the plea had been granted. In *Hawkins,* the guilty plea was entered twelve days into trial, and this Court carefully distinguished that case from cases like *Jackson,* where no trial had commenced. In *Ballard,* the defendant absconded from the jurisdiction for three

---

**2.** One justice was of the opinion that the unconstitutional and immoral execution of another human being was a sufficiently "compelling and cogent reason" to overrule an obviously erroneous decision less than a year old, but neither Justice Johnson nor Justice McDevitt agreed. *State v. Card,* 121 Idaho at 460, 825 P.2d at 1126.

years after he entered his plea. There, the trial court found the state's case had been prejudiced by the defendant's voluntary absence. These cases do nothing to the vitality of *Jackson* because there was no showing of prejudice to the state in *Jackson* and the case simply does not address that situation.

In short, *Jackson* is firmly in the mainstream of the law. Thus some "compelling and cogent reason" must exist to overrule it.

## II.

The majority, however, can muster only one infirm reason why *Jackson* should be overruled, to wit: "The utility of *Alford* pleas will be severely reduced if defendants are permitted to withdraw them before sentencing for no additional reason." 124 Idaho at 486, 861 P.2d at 56. The careful reader might have stopped there and wondered how the utility of *Alford* pleas could be *reduced* by adhering to the rule *now in effect*. This Justice was brought to ponder on that possibility. Would the utility of *Miranda* warnings be severely reduced if the United States Supreme Court refused to overrule *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)? If so, would the utility of *Miranda* warnings be increased if that case were overruled? Unless the laws of physics have been turned on their head ("for every *inaction* there is an equal and opposite *action*"), a reasonable guess is that the utility of *Alford* pleas would remain the same if *Jackson* is not overruled. Any other conclusion, i.e. the majority's, is simply irrational.[3]

The majority, apparently oblivious to the concept of cause and effect, blithely trips along to make the following statement: "[s]uch a holding [i.e. not overruling *Jackson*] might well lead to a reluctance on the part of prosecutors and judges to agree to the acceptance of such pleas." *Id.*, 124 Idaho at 486, 861 P.2d at 56. According to the majority, "[t]his would impair judicial

efficiency by eliminating a useful procedure for the resolution of criminal cases; it would also work to the detriment of defendants." *Id.*

As might be expected in this case, neither the State nor the majority has pointed to one iota of evidence, either empirical or anecdotal, about what the effect of *Jackson* has been on *Alford* pleas. However, I suspect that if the effect of *Jackson* is as pervasive and profound as the majority suggests, the Court would have heard about it sometime during the nearly twenty years which have lapsed since that case was announced. If the kind of baseless speculation engaged in by the majority is now all that is needed to overcome *stare decisis*, then an "open season" sign has been declared which can only tend to expose existing case law precedent to unwarranted attacks.

This justice would not overrule *Jackson* because there is no reason, much less a "compelling and cogent reason," to do so.

## III.

Additionally, because *Jackson* is soundly premised upon solid constitutional considerations, and because *Jackson* protects the accused's right to a jury trial along with the other constitutional rights appurtenant thereto it should remain unmolested. The rights created by the United States Constitution exist to check the power of the state and thereby protect every citizen's liberty. The minor inconvenience borne by trial courts and the state in cases like *Jackson* and Dopp's case now before us, is so inconsequential that no sensible person would subvert those fundamental and cherished rights merely to avoid such a minor annoyance. Ironically, it is the majority who now creates a "harsh mandate" by holding that a claim of actual innocence is not a substantial enough reason to withdraw a guilty plea even if that motion is made prior to sentencing and there is no prejudice to the state. What must be kept firm-

---

**3.** In my view, it is more likely that the utility of *Alford* pleas will be "severely reduced" by the majority's opinion because now defendants have

less incentive to enter those pleas. Thus the majority's criticism of *Jackson* more logically applies to the majority's opinion.

ly in mind is that an assertion of innocence is the most substantial reason for a trial which a person can advance, notwithstanding the majority's trivialization of that concept.

Instead of overruling cases "willy nilly," the majority should temper today's opinion and "course a less strident vein under the auspices" of *stare decisis.*[4]

**4.** 124 Idaho at 486, 861 P.2d at 56 (*citing United States v. Barker,* 514 F.2d 208 (D.C.Cir.1975).