# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 39869

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2013 Unpublished Opinion No. 472** |
| | ) | |
| Plaintiff-Respondent, | ) | **Filed: April 30, 2013** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **DOUGLAS JAMES STEINEMER, aka** | ) | **THIS IS AN UNPUBLISHED** |
| **STEINEMORE aka HOLSOPPLE,** | ) | **OPINION AND SHALL NOT** |
| | ) | **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Timothy Lee Hansen, District Judge.

Order denying motion to withdraw guilty plea, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent. John C. McKinney argued.

_____

PERRY, Judge Pro Tem

Douglas James Steinemer appeals from the judgment of conviction entered following the denial of his motion to withdraw his guilty plea. For the reasons set forth below, we affirm.

## I.

## BACKGROUND

On June 28, 2003, Steinemer kidnapped a woman in Mountain Home at knifepoint, bound her hands, covered her eyes and mouth with tape, and transferred her to the cab of a semi-truck. Steinemer and another individual, later identified as Hans Michael Holsopple, Steinemer's biological father, proceeded to drive from Mountain Home toward the Oregon-Idaho border, stopping multiple times to rape the victim who was being held in the sleeper area of the truck's cabin. The two men eventually released the victim, and she was able to contact a friend who took her to the hospital. DNA samples were collected as part of a sexual assault

1

examination, and the DNA profiles of two unknown individuals were entered into a national DNA database. In 2009, police were notified that Steinemer's DNA profile, which apparently had been recently added to the national database as part of an unrelated Florida case, appeared to match the profile of one of the victim's previously unidentified attackers. Steinemer was arrested in February 2010. After being advised of his *Miranda* rights, Steinemer admitted to kidnapping and raping the victim.[1]

Steinemer was indicted on one count of kidnapping in the first degree and three counts of rape. Pursuant to a plea agreement, Steinemer pleaded guilty to kidnapping in the first degree and to one count of rape, and the remaining rape charges were dismissed. Approximately six weeks later, Steinemer filed a motion to withdraw his guilty plea. He asserted that, prior to pleading guilty, he had not seen or heard the recording of a police interview with the victim in which the victim made statements that, according to Steinemer, supported a defense to the crimes, and that he would not have pleaded guilty if he had seen the recorded interview. After a hearing, the district court denied Steinemer's motion to withdraw his guilty plea. The district court imposed concurrent unified sentences of thirty years with thirteen-year determinate terms. Steinemer appeals.

## II.

## ANALYSIS

Idaho Criminal Rule 33(c) governs the withdrawal of guilty pleas.[2] Whether to grant a motion to withdraw a guilty plea is left to the sound discretion of the district court, and such discretion should be liberally applied. *State v. Arthur*, 145 Idaho 219, 222, 177 P.3d 966, 969 (2008). The defendant bears the burden of showing that withdrawal of the plea should be allowed. *State v. Dopp*, 124 Idaho 481, 485, 861 P.2d 51, 55 (1993). Rule 33(c) distinguishes between pleas made prior to and after sentencing, exacting a less rigorous burden for presentence motions. *Dopp*, 124 Idaho at 485, 861 P.2d at 55. To withdraw a guilty plea prior to sentencing,

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]     Idaho Criminal Rule 33(c) states: "A motion to withdraw a plea of guilty may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw defendant's plea."

the defendant need only show a "just reason" for withdrawing the plea. *Id.* However, even when the motion is presented before sentencing, if it occurs after the defendant has learned of the content of the presentence report or has received other information about the probable sentence, the district court may temper its liberality by weighing the defendant's apparent motive. *Arthur*, 145 Idaho at 222, 177 P.3d at 969, *State v. Hocker*, 115 Idaho 137, 139, 765 P.2d 162, 164 (Ct. App. 1988). The failure to present and support a plausible reason will dictate against granting withdrawal, even absent prejudice to the prosecution. *Dopp*, 124 Idaho at 485, 861 P.2d at 55.

Steinemer filed his motion to withdraw his guilty plea before sentencing, but after he had the opportunity to review the results of the psychosexual evaluation with counsel. Even if we assume that it would have been appropriate for the district court to "temper its liberality" in these circumstances, *see State v. Hawkins*, 115 Idaho 719, 722, 769 P.2d 596, 599 (Ct. App. 1989) *aff'd,* 117 Idaho 285, 787 P.2d 271 (1990), the district court did not do so. Instead, the district court determined that Steinemer had not met his burden under the most liberal "just reason" standard. Thus, the critical question in this appeal is whether Steinemer's assertion that he had not seen or heard the recording of a police interview with the victim constitutes a just reason for withdrawing the plea.

The police conducted a recorded interview with the victim on June 29, 2003, during which the victim made various statements that Steinemer asserts would support an affirmative defense of duress or coercion.[3] In an affidavit, Steinemer states, "The statements of the victim I am referring to are her articulating my father was in control and when she was asked whether I was in fear for my life; she said no, because I was following his commands." Although Steinemer indicated, on a guilty plea advisory form, that he had reviewed the evidence provided

---

[3]     This Court is unable to review the recordings because neither the audio nor the video of the recorded interview is part of the appellate record. We note that on appeal, Steinemer argues the victim's demeanor, as opposed to or in addition to the content of her statements, would have supported his defense, but that he did not make the same allegations in his affidavit. Instead, he merely alleged that there was "material" he was unaware of that he identified as specific statements made by the victim. Nothing in the affidavit indicated how the victim's demeanor led him to believe he would meet the elements of an affirmative defense.

during discovery including recordings, the district court determined that Steinemer had not, in fact, viewed or listened to recordings of interview before he entered the guilty plea.[4]

However, it is undisputed that Steinemer was aware of the victim's statements before he pleaded guilty. Even if Steinemer did not view or listen to the recordings of the interview, the same information was available to him through the police reports and the grand jury transcripts. According to the police reports of the interview, the victim reported that Steinemer told her "he had never done anything like this before" and that his father was "making him do this." The victim also made similar statements at the grand jury proceedings in which she indicated that Steinemer's father appeared to be controlling Steinemer, that Steinemer indicated several times that "he was being told he had to be doing this," and that he apologized several times during the kidnapping and rapes.

At a hearing on Steinemer's motion to withdraw his guilty plea, Steinemer's former attorney testified that before Steinemer pleaded guilty, he and Steinemer discussed a possible defense of duress or coercion approximately ten to twenty times based on information contained in the police reports and grand jury transcripts. He continued to testify:

> [L]aw enforcement was onto this notion that somehow there were two people and that one person may have been in control. And that was something that came from the alleged victim in their initial interview.
>
> And frankly, the initial interview, law enforcement, they questioned the legitimacy of the alleged victim's report. And they at length questioned her about what you perceived and that two people and what had happened. And this material from the alleged victim came up very organically and it came from the alleged victim.
>
> So when I discussed this with my client this was, from the defendant's standpoint, very good information because it's not a defense attorney prompting

---

[4]  On appeal, Steinemer also asserts that his attorney did not tell him to truthfully answer the question on the plea advisory asking whether he had reviewed all discovery materials, but did tell him the judge would not accept his plea unless he indicated that he had reviewed the discovery. Steinemer asserts that such advice constitutes "just cause" to withdraw the plea because the court would not have accepted the guilty plea if he had indicated that he had not reviewed all the discovery. To the extent that Steinemer is attempting to assert that counsel's failure to advise him to answer the question truthfully independently establishes "just cause" to withdraw his guilty plea, this Court will not address the issue because, as conceded by counsel during oral argument, Steinemer did not raise this issue below, *see Leader v. Reiner*, 143 Idaho 635, 637, 151 P.3d 831, 833 (2007), and because Steinemer has not provided any authority in support of the argument. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

4

them, it's something that comes from the alleged victim. So that to me was very important.

And that same information that was originally received by law enforcement was also presented in the grand jury and to a certain degree in the alleged victim's participation in the codefendant's sentencing. So there was a consistent threat of this defense theory that Mr. Steinemer wasn't in control.

Furthermore, during a recorded telephone call made from the jail on March 5, 2011, more than four months before he pleaded guilty, Steinemer stated:

When I go to court I'll have them [the victim's statements to the police] submitted so that way the jury can hear her saying that you know she knows I was in fear of my father, she knows I was not . . . or I was in control of my father and all that other good gossip stuff so that way the jury like understands I had nothing to do with it. That I didn't plan it. All that bullshit.

In the circumstances presented here--when Steinemer had not personally viewed or heard the recording but was aware of the victim's statements and discussed the possibility of using the statements to support a defense of duress or coercion with his attorney multiple times before pleading guilty--we cannot say that the district court abused its discretion by concluding that Steinemer did not show just reason to withdraw his guilty plea based on his assertion that he had not viewed or listened to the recordings of the police interview with the victim. The district court's order denying Steinemer's motion to withdraw his guilty plea is affirmed.

Chief Judge GUTIERREZ and Judge GRATTON **CONCUR.**